SHARYN LEE LAQUAY A/K/A Sharyn Lee Pearl A/K/A Sharyn Lee Wagner A/K/A Sharyn Lee Maxwell A/K/A Sharyn Lee Weatherford *v.* STATE OF MARYLAND

[No. 349, September Term, 1972.]

*Decided January 29, 1973.*

The cause was argued before ORTH, C. J., and MOYLAN, J., and EDWARD O. THOMAS, Associate Judge of the District Court of Maryland for District 2 and BRUCE C. WILLIAMS, Associate Judge of the District Court of Maryland for District 7, specially assigned.

*David J. Linden,* with whom were *Charles F. Morgan* and *Richard C. Hand* on the brief, for appellant.

*Harry A. E. Taylor, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, Arthur A. Marshall, Jr., State's Attorney for Prince George's County,* and *Richard H. Sothoron, Jr., Assistant State's Attorney for Prince George's County,* on the brief, for appellee.

ORTH, C. J., delivered the opinion of the Court.

This appeal is concerned with the right of the accused to the assistance of counsel at a revocation of probation proceeding.

## I

On 1 September 1971 the appellant, under the name of SHARYN LEE LAQUAY,[1] on trial in the Circuit Court for Prince George's County in Criminal Trials No. 11530, pleaded guilty to forgery. The plea was accepted and a

---

1. According to the indictment returned against appellant, she was also known by four other surnames, Pearl, Wagner, Maxwell and Weatherford. Gordon Maxwell Weatherford, Jr. was jointly indicted with her but separately tried.

verdict of guilty entered. On 4 October 1971, upon receipt of a presentence report, she was sentenced to imprisonment for four years. The execution of the sentence was suspended, and she was placed on probation under the supervision of the Department of Parole and Probation for a period of four years upon the usual twelve general conditions and upon two special conditions, namely that she "maintain employment" and that she "attend the meetings of the Narcotics Rehabilitation Unit."

On 10 January 1972 the Department of Parole and Probation made a special report to the court. Because of alleged violations of the conditions of probation and because "the subject has absconded supervision", it requested a warrant be issued for appellant "to show cause why her probation should not be revoked." The court issued a warrant for appellant's arrest on 14 January upon the information and oath of a member of the Probation Department. The application for the warrant stated that appellant had been released on probation on "all regular conditions and special conditions that the subject attend meetings of the Narcotics Rehabilitation Unit." It alleged that she violated the following conditions of her probation:

"Rule #6—Probationer shall not change residence or employment without permission.

Rule #7—Probationer shall report promptly whenever instructed to do so.

Special Condition—Drug program participation."

On 9 June 1972 there was a hearing on the warrant charging appellant with violation of probation, Criminal Trials No. 11530, in the Circuit Court for Prince George's County, at which appellant appeared *pro se*. The docket entries on that date read: "The court finds the Defendant in violation of probation and it is ordered that the suspended sentence of October 4, 1971 is stricken and

the probation revoked. It is ordered that the Defendant be incarcerated under her original sentence commencing June 9, 1972." Commitment issued.

## II

By Acts 1971, ch. 209, codified as Code, Art. 27A, the General Assembly established the Office of Public Defender in the executive branch of the government of this State on the declared policy "* * * to provide for the realization of the constitutional guarantees of counsel in the representation of indigents, including related necessary services and facilities, in criminal and juvenile proceedings within the State, and to assure effective assistance and continuity of counsel to indigent accused taken into custody and indigent defendants in criminal and juvenile proceedings before the courts of the State of Maryland, and to authorize the Office of Public Defender to administer and assure enforcement of the provisions of this article in accordance with its terms." Code, Art. 27A, § 1. The establishment of the Office and provisions for the appointment of its head and its personnel, § 3, were effective 1 July 1971; the remainder of the Act was effective 1 January 1972. Acts 1971, ch. 209, § 2.

By Art. 27A, § 4 (a), "It shall be the primary duty of the Public Defender to provide legal representation for any indigent defendant, eligible for services * * *." [2] Section 4 (b) mandates that legal representation shall be provided indigent defendants in certain proceedings. Among them are:

> (a) criminal proceedings where the defendant is charged with a serious crime before a court of this State, § 4 (b) (2);

---

2. Section 2 (f) defines "indigent" as meaning any person taken into custody or charged with a serious crime, who under oath or affirmation subscribes and states in writing that he is financially unable, without undue hardship, to provide for the full payment of an attorney and all other necessary expenses of legal representation.

(b) "Any other proceeding where possible incarceration pursuant to a judicial commitment of individuals in institutions of a public or private nature may result." § 4 (b) (5).

Section 2 (h) defines a "serious crime" to mean:

"(1) A felony;

(2) A misdemeanor or offense, the penalty for which involves the possibility of confinement for more than three months or a fine of more than $500 or any other offense where, in the opinion of the court, either the complexity of the matter, or the youth, inexperience, or mental capacity of the accused, may require representation of the accused by an attorney; and

(3) An act which except for the age of the person involved, would otherwise be a serious crime."

See Maryland Rule 719, as amended 8 May 1972, effective 1 June 1972, to conform with the Public Defender statute; Maryland District Rule 719.[3]

Although it is now the primary duty of the Public Defender to provide legal representation for any indigent defendant, the authority of any court to appoint an at-

---

3. Hereinafter, reference to "Rule 719" is to Maryland Rules of Procedure, Rule 719, as so amended.

We observe that the classification of an offense as a "felony" or a "serious crime", as defined by Code, Art. 27A, § 2 (h) and incorporated by Rule 719 b 2, is not a constitutional criterion for the right to an indigent accused to have counsel appointed to represent him. In *Argersinger v. Hamlin*, 407 U. S. 25, decided 12 June 1972, the Supreme Court found that the sixth amendment right to assistance of counsel is not governed by the classification of the offense or by whether or not a jury trial is required. It said, at 37: "We hold, therefore, that absent a knowing and intelligent waiver, no person may be imprisoned for any offense, whether classified as petty, misdemeanor, or felony, unless he was represented by counsel at his trial." *Argersinger* thus extended the holding in *Gideon v. Wainwright*, 372 U. S. 335, which involved a felony, for the reason that the rationale of *Gideon* has relevance to any criminal trial, where an accused is deprived of his liberty. 407 U. S. at 32. See *Towers v. Director*, 16 Md. App. 678.

Rule 719 c and M.D.R. 719 d deal with waiver of counsel and prescribe the procedure to be followed upon indication that a defendant wishes to waive counsel. See Rule 719 f; M.D.R. 719 d 3.

torney to represent an indigent person is expressly preserved by the statute in two areas, § 6 (f):

> (1) "* * * where there is a conflict in legal representation in a matter involving multiple defendants and one of the defendants is represented by or through the Office of the Public Defender * * *", or
> (2) "* * * where the Office of the Public Defender declines to provide representation to an indigent person entitled to representation under [the Public Defender statute]."

Rule 719 b 2 recognizes the authority of a court to which the Maryland Rules of Procedure apply, to appoint counsel for an indigent person, see Rule 5 i, as does M.D.R. 719 b with respect to the District Court. Under both the Maryland Rules, Rule 719 b 3 (i) and the District Rules, Rule 719 c 2, eligibility for assigned counsel shall be determined as provided by the Public Defender act, § 2 (f) defining indigency, and § 7, dealing with the determination of eligibility and investigation of the financial status of a defendant.

Code, Art. 27A, § 4 (d) sets out the extent of representation:

> "Representation by the Office of the Public Defender or by an attorney appointed by the Office of the Public Defender, shall extend to all stages in the proceedings, including custody, interrogation, preliminary hearing, arraignment, trial and appeal, if any, and shall continue until the final disposition of the cause, or until the assigned attorney is relieved by the Public Defender or by order of the court in which the cause is pending."

Rule 719 d and M.D.R. 719 e are to like effect, but include in their provisions counsel appointed by the court.

## III

On 25 June 1969 this Court decided the case of *Knight v. State,* 7 Md. App. 313. We discussed the nature of a revocation of probation proceeding. We believed that such a proceeding was not a "criminal prosecution" in the constitutional sense and noted the rules which had been established governing its conduct, at 321. We found that if the probationer was indigent the court was not obliged to appoint counsel for him "unless due process would be affronted, in that, for lack of counsel the probationer would be at such a disadvantage that an ingredient of unfairness actively operated in the process" leading to the revocation of his probation. *Idem.* The short of it was that we thought that the Sixth Amendment right to assistance of counsel did not attach to a revocation of probation proceeding but that the Fourteenth Amendment right of due process of law may attach. We relied primarily on *Scott v. State,* 238 Md. 265; *Crenshaw v. State,* 222 Md. 533, and *Edwardsen v. State,* 220 Md. 82. We considered the effect of *Mempa v. Rhay,* 389 U. S. 128,[4] and did not find its holding to be that every hearing for a judicial determination as to whether the conditions of probation have been violated invokes the right to counsel. 7 Md. App. at 323. We thought it clear that "* * * the rationale of *Mempa* is that, as the *imposition* of sentence is a critical stage of a criminal proceeding, a defendant has the right to counsel at any proceeding at which sentence is *imposed,* no matter how the proceeding is characterized." *Idem.* We limited *Mempa* to that context. We held, therefore, that *Mempa* affected the rules as to probation revocation hearings followed by this State only when, at the trial of the substantive offense, the *imposition* of sentence was conditionally suspended. It was in those circumstances that the judge presiding at the revocation hearing must advise the probationer of his right to obtain counsel and must appoint counsel

---

4. The rule announced in *Mempa* has been held to be retroactively applicable. *McConnell v. Rhay,* 393 U. S. 2.

for him when he is indigent (absent an effective waiver), because upon a finding that the terms or conditions of probation had been violated, sentence may then be *imposed* as distinguished from the mere reinstatement by the striking of suspension of a sentence which had been previously imposed and its execution suspended. *Id.*, at 325. We found support for our view in cases considering the matter in other jurisdictions. *Id.*, at 323. Foreign decisions are divided on the point but many state and federal cases have read *Mempa* as have we. See cases cited in *Hewett v. North Carolina*, 415 F. 2d 1316, (4th cir. 1969) at 1322; "Right to Assistance of Counsel at Proceedings to Revoke Probation", Annot., 44 A.L.R.3d, 306, 315-316. There are, of course, cases *contra*, such as *Hewett*, which argues vigorously that counsel must be appointed in all revocation of probation proceedings where the procedure affects the substantial rights of the individual.[5] We think the prevailing view as to revocation of probation proceedings is our view in *Knight*.

Appellant argues that to permit representation at revocation hearings but not provide indigent probationers with counsel denies equal protection of the laws. The revocation proceeding is not a criminal hearing on the violation alleged. Although it may be deemed a part of the criminal process for the crime for which the probationer was convicted, he has already been tried and found guilty of his past crime. It is therefore that a jury trial and its concomitant of proof beyond a reasonable doubt, and the rules governing criminal trials, are not

---

5. It thought that substantial rights were affected when a judge has the discretion whether to revoke a probation upon his finding that a condition of probation had been violated, because liberty hangs in the balance. 415 F. 2d at 1323. See 42 New York University Law Review 955 (1967).

In oral argument before us counsel for appellant opined that there was an equal division in cases throughout the country on the question whether the right to counsel attached. But see *Knight v. State, supra*, note 7 at 323. Many of the cases deal with revocation of parole hearings, however. See 33 A.L.R.3d at 272-282. See also *Bearden v. South Carolina*, 443 F. 2d 1090 (4th cir. 1971) which distinguishes between probation and parole hearings.

necessary safeguards at the revocation inquiry. Thus, the revocation proceeding, unless it is one in which sentence is to be *imposed,* is not a critical stage in the criminal process. We do not believe that the equal protection clause compels departure from our rule regarding the assistance of counsel in revocation of probation proceedings. We are inclined toward the reasoning expressed in *Smith v. Warden,* 450 P. 2d 356 (S. Ct. Nevada, 1969), cert. denied, 396 U. S. 860. The court said, at 357: "A disparity in wealth between a probationer who can afford to retain counsel and one who cannot does not necessarily create an equal protection problem. Something more must be present. There must be a deviation from commonly held notions of fundamental fairness which creates an invidious discrimination. Thus, a court concerned with the problem must distinguish between the privilege of one to have counsel present and the constitutional right to enjoy the assistance of counsel. The transformation of privilege into right occurs when a critical stage in the criminal process is reached."

We are not persuaded to depart from our holding in *Knight* and expressly reaffirm it. See *Dugas v. State,* 12 Md. App. 165, 167. In so doing we have considered the impact of the intervening Public Defender act. We do not believe that it compels a holding contrary to *Knight.* We point out that the act declared it to be the policy of the State and the intent of the Legislature "* * * to provide for the realization of the constitutional guarantees of counsel in the representation of indigents, * * *." Code, Art. 27A, § 1. As we have discussed, under the law as established in this State, the constitutional guarantees of counsel in the representation of indigents in revocation of probation proceedings extends to (1) proceedings in which sentence is imposed, and (2) proceedings in which "due process would be affronted, in that, for lack of counsel the probationer would be at such a disadvantage that an ingredient of unfairness actively operated in the process that led to the revocation of his

probation." *Scott v. State, supra,* at 275.[6] The prescriptions of Code, Art. 27A, § 4 are to be considered in that light.

We note that neither by the Public Defender act nor by the rules of procedure does the duty of counsel appointed to represent an indigent defendant in the trial of the substantive offense extend to a subsequent proceeding to revoke probation. Trial counsel's representation extends, at the most, "until the final disposition of the cause", Code, Art. 27A, § 4 (d) ; Rule 719 d; M.D.R. 719 e. We think that "final" in this frame of reference means what the Supreme Court said it meant in *Linkletter v. Walker,* 381 U. S. 618, 622, note 5: "By final we mean where the judgment of conviction was rendered, the availability of final appeal exhausted, and the time for petition for certiorari had elapsed * * *." See *Terry v. Warden,* 243 Md. 610; *Mauldin v. Warden,* 1 Md. App. 38.

## IV

On April 20, 1972 the Public Defender issued a Declaration of Policy because questions had arisen as to the types of cases in which his Office was authorized to provide representation. With respect to probation proceedings the policy declared was that counsel would be furnished to indigent persons "only in cases where such representation is required under the holding in *Knight.*" On 31 May 1972 the District Public Defender for Prince George's County sent a memorandum to judges of the Circuit Court and District Court of that county:

"Henceforth, as a matter of statewide policy, the Office of the Public Defender will not undertake representation of an indigent defendant in a case for violation of probation, wherein pre-

6. The Supreme Court has the present opportunity to answer the question of right to counsel in revocation of probation proceedings if it chooses to do so. The question is presented in *Gagnon v. Scarpelli,* No. 71-1225, October Term, 1971, before the Court on writ of certiorari to the United States Court of Appeals for the Seventh Circuit. The case was argued on 9 January 1973.

viously such defendant has been sentenced, thereafter placed on probation, and is then accused of violating such probation.

There is only one exception to this policy, that is where the defendant was not sentenced prior to the time that he was placed on probation. In that event, this office will undertake representation in that the Court's determination is one of not only violation thereof, but is also a sentence hearing.

See *Knight v. State,* 7 Md. App. 313 (1969), *Declaration of Policy of Public Defender's Office,* April 20, 1972, and *Mempa v. Rhay,* 389 U. S. 128."

## V

On 18 May 1972 appellant appeared before the Circuit Court for Prince George's County, Taylor, J., presiding, for arraignment on the charge in the warrant.[7] She informed the court that she desired to have an attorney represent her but was unable to obtain one because she was in custody and had no funds. The judge made inquiry of her, and, apparently satisfied that she was indigent, said he would refer the matter to the Public Defender's office. The docket entries on 18 May read: "Plea of 'Not Guilty' and election of Jury Trial entered in absence of Counsel. Continued to May 25, 1972 to retain counsel as to Laquay." On 24 May the District Public Defender filed a "Line": "Mr. Clerk: Please note that the Office of the Public Defender will not undertake representation of this defendant in this case, violation of

---

7. At appellant's revocation of probation hearing it appeared that she had been arrested in California and incarcerated from 21 March 1972 in Marin County Jail in that State. She was transported to the Montgomery County Detention Center on 5 April 1972. It seems she had been convicted on charges of forgery and uttering in Montgomery County on 6 October 1971 and was yet to be sentenced. Although there were no other charges pending in Prince George's County, the Sheriff had a Governor's Warrant to extradite her to Virginia for trial on charges of larceny of a motor vehicle.

probation, in that sentencing has already been imposed and the hearing is merely a factual one to determine whether or not the conditions of probation have been violated."

On 25 May appellant was again brought before the court, Bowie, J., presiding. The court asked her if she had an attorney and she said she did not. Asked why, she said: "I have been held in the Montgomery Detention Center and I thought I was going to get a public defender. I wasn't notified until yesterday that the Public Defender's office wouldn't give me a public defender." The court inquired: "Why not?" She explained: "Because it's for violation of probation and they won't evidently give you a public defender. I didn't quite understand it." The court indicated it did not understand it either and said: "Refer it to the Public Defender." The docket entries read: "Case referred to the Office of the Public Defender as to Laquay."

On 9 June appellant was brought into court, McCullough, J. presiding, for the third time in regard to the warrant. The case was called and the State's Attorney directed the court's attention to the letter of 24 May that the Public Defender would not represent appellant. The transcript reads:

"THE COURT: Miss Laquay, are you ready to proceed?

DEFENDANT LAQUAY: I wanted a lawyer, but if the State can't appoint one I am unable to obtain one because I am being detained at the Montgomery County Detention Center. I don't have any other choice, I don't guess, in the matter.

THE COURT: All right. You will be permitted to cross-examine the witnesses as they testify."

The hearing proceeded. A parole and probation agent was the only State's witness, the transcript reads:

"THE COURT: Miss Laquay, do you have any cross-examination of this witness?

DEFENDANT LAQUAY: No, I don't.

THE COURT: Would you like to ask her any questions whatsoever?

DEFENDANT LAQUAY: No, sir. I am not a lawyer and don't have any idea what I should ask her.

THE COURT: You don't have to be a lawyer to know whether or not you believe she has testified to the truth or stretched the facts or made any misrepresentations.

DEFENDANT LAQUAY: I don't have any questions that I want to ask her."

The State rested. The court asked appellant if she wanted to testify and appellant said she did not. The court asked: "Do you wish to make any statement at all?" and appellant said: "No, sir." The court found her in violation of probation and struck the suspension of the sentence previously imposed so that it became effective 9 June 1972.

## VI

There is no question of waiver of counsel by appellant. She made amply clear on three occasions in open court before the hearing started that she desired counsel to represent her. No determinations upon inquiry by the court as to waiver as required by Rule 719 c appears in the record as required by Rule 719 f.

It is evident that the refusal of the Public Defender to provide representation for appellant was not because of her financial ability to engage and compensate competent private counsel and to provide all other necessary expenses of representation. Code, Art. 27A, § 7 (a). It does not appear that the Office of the Public Defender made an investigation of her financial status and found she was unable to retain private counsel. § 7 (b). At the time of her first arraignment the judge made personal inquiry of her financial ability to employ counsel and,

satisfied she was indigent, referred her to the Public Defender's office. The judge at the time of the second arraignment did not understand why the Public Defender would not provide representation and again referred her to him. We note that, by order of the court below, upon affidavit made by appellant, the appeal to this Court is at the expense of the State because appellant "is unable by reason of poverty to defray the expenses."

It is patent that the hearing was conducted without counsel assisting appellant because the Public Defender for Prince George's County declined to provide representation and that he declined to provide representation because the proceeding involved was not one at which sentence was to be imposed. It seems that the hearing judge accepted this at face value as good and sufficient reason not to appoint counsel, although we do not find in the record a statement by the court of the reasons why counsel was not appointed. Such statement is required by Rule 719 b 3 (ii). The position of the District Public Defender becomes clearer in the light of his memorandum of 31 May 1972. In it he stated that there was only "one exception" to the policy of not providing representation for an indigent defendant in a case for violation of probation, and that exception "is where the defendant was not sentenced prior to the time that he was placed on probation." This policy is not based upon a correct statement of the law. There is another exception to the general rule and *Knight* so stated. The appointment of counsel for an indigent is constitutionally required, in the absence of an effective waiver, when due process would be affronted, in that, for lack of counsel the probationer would be at such a disadvantage that an ingredient of unfairness actively operates in the process leading to the revocation of his probation. 7 Md. App. at 319-321. See *Scott v. State, supra; Edwardsen v. State, supra; Sweeney v. State,* 1 Md. App. 233. If it reasonably appears that due process would be so affronted by the lack of assistance of counsel, the Public

Defender should provide representation, and if the Public Defender declines to do so, the court should appoint counsel.

We are not impressed by argument that this empirical rule, premising the right to counsel upon the aggravated circumstances of particular cases, is not feasible. It is true that the Supreme Court in *Gideon v. Wainwright, supra,* abandoned the empirical approach after 21 years of experimentation under *Betts v. Brady,* 316 U. S. 455, but it invoked it again in *Argersinger v. Hamlin, supra.* In applying the rule that no person may be deprived of his liberty as the result of any criminal prosecution in which he was denied the assistance of counsel, the Court requires trial judges to ascertain before trial whether the case merits a sentence of imprisonment. The opinion of the Court stated, 407 U. S., at 40:

> "Under the rule we announce today, every judge will know when the trial of a misdemeanor starts that no imprisonment may be imposed, even though local law permits it, unless the accused is represented by counsel. He will have a measure of the seriousness and gravity of the offense and therefore know when to name a lawyer to represent the accused before the trial starts."

And we note that the empirical rule was adopted by the United States Court of Appeals for the Fourth Circuit in *Bearden v. South Carolina, supra,* in holding that, although the sixth and fourteenth amendments do not in every case require the states to afford counsel to indigent parolees at revocation hearings, 443 F. 2d at 1093, the providing of representation should be on a case-by-case approach. It observed that the Constitution requires that counsel be furnished when the fairness of the proceeding would be impaired, in other words under the dictates of fundamental fairness and due process, *id.,* at 1094-1095.

We are aware, as was the court in *Bearden,* that a case-by-case approach articulation of where the line should be drawn between those who should be supplied with counsel and those lawfully refused such assistance may be a difficult undertaking. It is suggested that if there be real uncertainty, it be resolved by providing the assistance of counsel rather than denying it.

As required of us when a constitutional right is involved, we have made an independent constitutional appraisal of the entire record. *State v. Hamilton,* 14 Md. App. 582, 592; *Herbert v. State,* 10 Md. App. 279, 287; *Gardner v. State,* 10 Md. App. 233, 245. Even considering that a judicial inquiry to determine whether conditions of probation have been violated is informal in character and not subject to the limitations imposed by law upon a trial leading to conviction of a crime, we cannot say that there was no unfairness in the proceedings here due to the absence of counsel representing appellant. For example, the probation officer testified that "the rules and regulations of probation were reviewed and Miss Laquay was given an opportunity to ask questions of what was expected of her," but when the State asked its witness for a copy of the rules she said she did not have a copy of them. The witness had no personal knowledge "as to whether Miss Laquay was given a copy of the conditions of probation." The witness said she knew that appellant had no contact with the Probation Department after 27 October 1971 because "I was never told of any contact." Asked if she could identify the signature of appellant on the document setting out the rules and regulations as to Sharyn Lee Laquay, signed by a former probation agent, Kenneth Boehm, the witness could not, stating: "I don't believe I ever seen her signature on anything else." The witness testified that once after she learned of appellant's whereabouts, appellant telephoned her from Montgomery County. "At this time I was no longer the supervising agent, but was assigned to investigations in Upper Marlboro, Maryland, so I referred her to her current agent, Mrs. Barbara Berlew, only I

think it was Miss Barbara Banz back then." This was not explored further and remained unexplained. Whether the fact that appellant telephoned the probation department had relevant bearing on the inquiry being conducted is unknown. The transcript of the proceedings gives the impression that what the only witness called by the State could not personally establish the State simply glossed over. When appellant, in answer to the court's question said she could not ask the witness any questions because "I am not a lawyer and don't have any idea what I should ask her," the only assistance she received was the court's observation, "You don't have to be a lawyer to know whether or not she has testified to the truth or stretched the facts or made any misrepresentations." We are constrained to conclude that as to the inquiry whether conditions of probation were violated as here conducted, due process was affronted, in that, for lack of counsel appellant was at such a disadvantage that an ingredient of unfairness actively operated in the process leading to the revocation of her probation. We hold that in the circumstances here existent appellant was entitled to the assistance of counsel at the proceeding to determine whether she had violated the conditions of probation.

> *Order revoking probation and striking suspension of sentence reversed; case remanded for a new hearing.*