STATE OF MARYLAND *v.* NATHAN E. DIGGS

[No. 772, September Term, 1974.]

*Decided February 20, 1975.*

The cause was argued before ORTH, C. J., and POWERS and MOORE, JJ.

*Gilbert Rosenthal, Assistant Attorney General* and *Harvey Greenberg, Assistant State's Attorney for Baltimore City,* with whom were *Francis B. Burch, Attorney General* and *Milton B. Allen, State's Attorney for Baltimore City,* on the brief, for appellant.

*Ronald B. Graham, Assistant Public Defender,* with whom were *Alan H. Murrell, Public Defender,* and *Michael S. Levin,* on the brief, for appellee.

ORTH, C. J., delivered the opinion of the Court.

Both the Court of Appeals and this Court have taken pains to persuade, expostulate, and warn bench and bar that the Maryland Rules of Practice and Procedure "are not guides to the practice of law but precise rubrics 'established to promote the orderly and efficient administration of justice and [that they] are to be read and followed.'" *Isen v. Phoenix Assurance Co.,* 259 Md. 564, 570, quoting *Brown v. Fraley,* 222 Md. 480, 483; *Green v. State,* 19 Md. App. 683, 687. It has been made abundantly clear that they are not apocrypha but "shall, when made, have the force of Law, until rescinded, changed, or modified by the said Judges [of the Court of Appeals], or the General Assembly." Constitution of Maryland, Art. IV, § 18; *Wilson v. State,* 227 Md. 99. They have been enforced rigorously, ofttimes with unhappy consequences for those who did not observe them. Despite the repeated cautions and imploring admonishments, there still comes to hand, all too frequently, examples of failure to pay heed. The case before us provides another illustration.

Here the bench was at fault, with the result that a full plenary trial in a criminal cause must be nullified, and the accused tried again almost two years after the crime was committed. But the rule disregarded is a fundamental one of real import. It concerns the constitutional right of a person accused of crime to have the assistance of counsel at his trial.

NATHAN E. DIGGS was arrested on 10 May 1973 and charged under warrant #47300972 with unlawfully possessing in Baltimore City controlled paraphernalia, namely glassine bags suitable for packaging a controlled dangerous substance in sufficient quantity and under circumstances to reasonably indicate an intent to manufacture and distribute, and under warrant #47300973 with possession of heroin. He was not recommended by the Pre-Trial Release Division of the Supreme Bench of Baltimore City for release on his own recognizance. The docket entries reflect that on 11 May he was released on $500 bail posted by a bonding company.[1] The warrants came on for trial in the District Court of Maryland, District I, Baltimore City, Criminal Division, on 6 June 1973. According to the transcript of the proceedings, James Stancil appeared on behalf of Diggs. Stancil informed him of his right to be tried by a jury and of his right to waive a jury trial and be tried by the court. Diggs prayed a trial by jury and bail was continued. It seems from the transcript that there were companion cases against one Carl Alexander and a Miss Cook and that James L. Foster appeared on their behalf. The transcript ends with the notation: "Cases forwarded to Jury in Criminal Court on June 20, 1973."

On 20 June 1973 in the Criminal Court of Baltimore, the State called the cases against Diggs. Howard Dwin, Esq. addressed the court, Judge James W. Murphy presiding:

"If it please the Court, Miss Cook, Mr. Alexander.

---

1. At the post conviction hearing Diggs testified that bail was in the amount of $5,000, that he obtained a professional bailbondsman and that bail was posted. There is indication in the record before us that the fee was $350.

If Your Honor please, I am informed by both of
them that as of yesterday apparently an attorney
from the Legal Aid agreed to represent them. They
had been talking to him and preparing the case and
yesterday sometime in the afternoon they were
informed by this gentleman he was not going to
represent them. These files were rushed over to the
Public Defender yesterday afternoon by Legal Aid,
and these two people would like to and they have
the financial means to hire their own attorney. I
would like to have the case postponed so they can
hire an attorney of their choice with the
understanding that should Your Honor grant this
postponement that they better be ready for trial
with or without an attorney, and if you have the
means—as to Diggs—I really have no knowledge
of him, but he is a co-defendant in this case
— I can talk with him and see what the problem
is."

Miss Cook requested a postponement for a week to obtain an
attorney. Dwin thought the State would want to try all the
cases together "since it is a search and seizure warrant" and
thought it "simply logical" that if the other two cases were
postponed Diggs's case would follow. After discussion about
Legal Aid's representation in the District Court,[2] the State
declared it had no objection and gave a new trial date of 27
July. The court granted a postponement: "All right. July
27th. Don't forget that date. That's as to Cook, Alexander
and Diggs. Do you all understand the cases will be set for
July 27th?" Each defendant answered, "Yes." The judge took
pains to explain that the trial on 27 July in all probability
"will not be in this courtroom. Criminal Court Part X will
probably be down the hall." He warned: "But in any event,

---

**2.** It appeared that "Legal Aid" represented "them" in the District
Court but, according to Miss Cook, "He can't come downtown. Can't
represent us at the Supreme Bench." The judge after observing, "Well, he
shouldn't have represented them in the District Court," said, "Well ap-
parently these people were representing this man — Legal Aid, and all
of a sudden they dumped their case. I can't really fault them for that. . . .
But I might fault him, but I can't fault them."

get your own counsel and be ready for trial that day whether or not."

In the record before us there is a transcription of "the excerpt of docket proceedings in the Criminal Court, Part X, of Baltimore City in the matter of the postponement of the case of Nathan Diggs on July 27, 1973", before Judge Aaron Baer. It notes the appearances of Charles Brown, Esq., Assistant State's Attorney and David Jacobs, Esq., Public Defender Attorney. The transcript begins with Brown informing the judge that Diggs "came into your court about an hour ago." He reminded the judge that co-defendants Patrice Cook and Carl Alexander had been tried "this morning." He said: "At this time all the officers have left, Your Honor. The State is unable at this time to go ahead with that case [against Diggs]." The judge asked Diggs why he was late and Diggs's explanation was that his wife had heart trouble. "I had to see about her and I was late getting here; when I got her it was about 11:00 or something and I didn't know where the courtroom was, because when I was here they said they would move it from up, up in 10,438." The judge made further inquiry about Mrs. Diggs. Diggs replied: "She had heart trouble and I had to rush her to the hospital, and I had to see about her. That's why I was late." The judge struck the bail forfeiture and directed that a trial date be set. The State asked if Diggs had an attorney and Diggs said he did not. He was asked if he could afford an attorney and he said: "I — no, not at this time." The Public Defender said that he would be interviewed — "We'll take care of it." Trial was set for 11 September and Diggs was so informed by the Clerk.

The warrants came on for trial in the Criminal Court of Baltimore, Part 10, before Judge Baer, on 11 September 1973 as scheduled. The Assistant State's Attorney called the case. The transcript shows what then transpired:

"THE CLERK: Mr. Diggs, step up. Mr. Diggs, do you have an attorney?
THE DEFENDANT: No.

THE CLERK: Have you made arrangements for an attorney?

THE DEFENDANT: No.

THE CLERK: You have not?

THE DEFENDANT: Well, I tried to get one at first when I was here before. But, I couldn't get the money to get one.

THE CLERK: Have you talked to the Public Defender?

THE DEFENDANT: No.

THE COURT: Has this case been postponed before?

THE CLERK: If has been postponed twice, Your Honor, in this court and I don't know about the District.

THE COURT: Why was your case postponed the last time?

THE DEFENDANT: The last time, Your Honor, when I got here it was a little late and the other two defendants had been tried and you postponed the case until today. The reason I was late —

THE COURT: Forget about the reason why you were late. What did I say about your coming into Court the next time without an attorney?

THE DEFENDANT: You said that the case would be postponed and another gentlemen —

THE COURT: I told you it would be postponed and what?

THE DEFENDANT: It would be postponed and another gentlemen came out to speak to me about going to a lawyer I had an accident case with or go to the Public Defender.

THE COURT: You say you have not talked to the Public Defender?

THE DEFENDANT: No.

THE COURT: Did I tell you if you came to court today you would be tried with or without an attorney.

THE DEFENDANT: I think you did, Your Honor.

THE COURT: Then, why are you here without an attorney?

THE DEFENDANT: I haven't been able to get an attorney. I had been in the hospital.

THE COURT: However, I told you the last time you were here that if you did not come in with an attorney you would be tried without one.

THE DEFENDANT: Yes.

THE COURT: Alright. Have a seat. You will be tried without one."

The judge explained: "You understand, Mr. Diggs, that the reason I am saying you will be tried today without an attorney is that I believe you have effectively waived your right to have an attorney because you were given notice at your last hearing that you would be tried today with or without a lawyer." Diggs was arraigned, pleaded not guilty, and elected to be tried by the court. The trial proceeded. The State offered evidence and rested. The court fully informed Diggs of his right to testify or not testify. Diggs testified, and was afforded the opportunity for allocution before verdict was rendered. He was found guilty of both offenses. After examination of him by the court as to his background, employment and marital status, he was sentenced to 4 years on each conviction, the sentences to run concurrently. The judge advised Diggs about his rights to file a motion for a new trial, to petition for a review of sentence, and to file an appeal to this Court. Diggs did not avail himself of any of these rights. On 22 March 1974, however, he collaterally attacked the judgments by filing a petition in proper person for relief under post conviction procedures, giving as his sole reason why the judgments should be set aside that "The State failed to produce an attorney to represent the Petitioner at his trial." Diggs added: "We hold these truths to be self evident; that it is not necessary to cite cases of Law at this time according to the Maryland Annotated Code; yet it is clear that the Constitutional rights of the Petitioner has been violated." The judge presiding at the hearing which

followed agreed. On 30 September 1974 he granted Diggs a new trial. The State applied for leave to appeal. We granted the application and the case was transferred to our direct appeal docket, briefed and argued. Code, Art. 27, § 645-I; Maryland Rule BK 47. The sole contention of the State is that the court below was wrong in granting Diggs a new trial.

Diggs testified at the hearing. He said that he did not have an attorney at his trial, that the trial judge did not ask if he had an attorney, did not advise him that he had the right to an attorney, and did not inquire, in any way, or in any manner, whether he had the ability to obtain counsel. He said that he did not have time to request counsel although he desired an attorney. He asserted he was late for the trial and that he explained that the reason he was late was the sickness of his wife. "So, the judge stated that with or without an attorney, he was going to try me anyway, and that's what happened." Diggs's counsel opined that his client was confused, and, of course, he was. What actually occurred, as we have indicated, was shown by the transcripts of the proceedings of 6 June, 20 June, and 27 July 1973 which were offered in evidence by the State, and by the transcript of the trial on 11 September 1973, which was received in evidence as a joint exhibit. The substance of what was elicited from him on cross-examination was that the case was originally scheduled for trial on 23 May 1973, and was postponed to 6 June, at which time it was sent to the Criminal Court of Baltimore for trial on 20 June. On that date it was postponed to 27 July and then to 11 September. From the time of his arrest to the time he was tried he did not obtain a lawyer because he could not afford one, and he did not seek the aid of the Public Defender because he did not know about the Public Defender. On re-direct examination he said that the Public Defender had never approached him and that he had never talked to anyone from that Office. It was represented to the court that Stancil was not with Legal Aid or a Public Defender, that Foster was with Legal Aid, and that Dwin and Jacobs were Assistant Public Defenders. Diggs claimed that during the

entire period he had no money to employ an attorney. On re-cross-examination it was adduced that he had been represented by a court appointed attorney when convicted of a crime about eleven years ago. He said that when the trial date of 11 September was set on 27 July, "I left the courtroom." He did not "recall any lawyer speaking to [him] on that particular day."

Willie Hart testified on behalf of the State. He said he was employed as an investigator for the Public Defender in May 1973, assigned to the Southern District. He "was required to interview all persons incarcerated at that particular District to find out if he would be eligible for the Public Defender's Office." It was on 11 May 1973 that he interviewed Diggs, who was charged with possession of heroin and possession of paraphernalia. He explained that he was an investigator for the Public Defender's Office and asked if Diggs understood the function of the Public Defender. Diggs "acknowledged that he did." "I took a standard application which Mr. Diggs signed. At the time, after completing Mr. Diggs' record, he informed me that he would get his own lawyer. And he refused the services of the Public Defender." The records of the Public Defender did not indicate an interview of Diggs after 11 May 1973.

We said in *Wayne v. State,* 4 Md. App. 424, 428: "The absolute constitutional right of an indigent accused in a serious State criminal prosecution to have counsel appointed for his defense is, of course, now settled beyond question. *Gideon v. Wainwright,* 372 U. S. 335; *Manning v. State,* 237 Md. 349; *Montgomery v. Warden,* 1 Md. App. 30." But even a constitutional right may be waived. To be effective, however, the waiver must meet the classic definition contained in *Johnson v. Zerbst,* 304 U. S. 458, 464, that waiver means "an intentional relinquishment or abandonment of a known right or privilege." Further, *Carnley v. Cochran,* 369 U. S. 506, 516, mandates: "Presuming waiver from a silent record is impermissible. The record must show, or there must be an allegation and evidence which show, that an accused was offered counsel

but intelligently and understandingly rejected the offer. Anything less is not a waiver."

That part of Maryland Rule 719 which concerns appointment of counsel implements the constitutional right to counsel in criminal proceedings. As last amended 8 May 1972, effective 1 June 1972,[3] it provides:

"b. *Appointment of Counsel.*

2. When Required — Conditions.

Unless the accused waives his right to be represented by counsel or is financially able to obtain counsel, the court shall request the Office of the Public Defender to designate or appoint counsel to represent the accused if the offense charged is a serious crime, as defined in Code, Article 27A (Public Defender)[4]

---

**3.** For the early history of the Rule, see *Hill v. State*, 218 Md. 120.

**4.** Cross references to § b 2 of the Rule read:

"Code, article 27A, § 2 (f) defines 'indigent' as meaning any person taken into custody or charged with a serious crime, who under oath or affirmation subscribes and states in writing that he is financially unable, without undue hardship, to provide for the full payment of an attorney and all other necessary expenses of legal representation; § 2 (h) defines 'serious crime' as meaning:

(1) A felony;

(2) A misdemeanor or offense, the penalty for which involves the possibility of confinement for more than three months or a fine of more than $500, or any other offense where, in the opinion of the court, either the complexity of the matter, or the youth, inexperience, or mental capacity of the accused, may require representation of the accused by an attorney; and

(3) An act which except for the age of the person involved, would otherwise be a serious crime; . . . ."

We noted in *Laquay v. State*, 16 Md. App. 709, 714, n. 3:

"We observe that the classification of an offense as a 'felony' or a 'serious crime', as defined by Code, Art. 27A, § 2 (h) and incorporated by Rule 719 b 2, is not a constitutional criterion for the right to an indigent accused to have counsel appointed to represent him. In *Argersinger v. Hamlin*, 407 U. S. 25, decided 12 June 1972, the Supreme Court found that the sixth amendment right to assistance of counsel is not governed by the classification of the offense or by whether or not a jury trial is required. It said at 37: 'We hold, therefore, that absent a knowing and intelligent waiver, no person may be imprisoned for any offense, whether

### 3. Appointment by Court.

In a case in which the court has authority to appoint counsel under the provisions of Code, Article 27A (Public Defender) —

(i) The court shall determine the eligibility of the accused for appointed counsel under the provisions of Code, Article 27A (Public Defender), § 2 (f) and § 7.

(ii) The court shall include in the record a statement of the reasons why counsel was not appointed whenever it has been determined that an accused was ineligible for appointed counsel.[5]

### c. *Waiver Inquiry.*

If, at any stage of the proceeding, an accused indicates a desire or inclination to waive representation, the court shall not permit such a waiver unless it determines, after appropriate questioning in open court, that the accused fully comprehends: (i) the nature of the charges and any lesser — included offenses, the range of allowable punishments, and that counsel may be of assistance to him in determining whether there may be defenses to the charges or circumstances in mitigation thereof; (ii) that the right to counsel includes the right to the prompt assignment of an attorney, without charge to the accused, if he is financially unable to obtain private counsel; (iii) that even if the accused intends to plead guilty,

---

classified as petty, misdemeanor, or felony, unless he was represented by counsel at his trial.' *Argersinger* thus extended the holding in *Gideon v. Wainright,* 372 U. S. 335, which involved a felony, for the reason that the rationale of *Gideon* has relevance to any criminal trial, where an accused is deprived of his liberty. 407 U. S. at 32. See *Towers v. Director,* 16 Md. App. 678."

5. Code, Art. 27A, § 6 (f) provides that the Public Defender Act shall not be construed to deprive any court of its authority to appoint an attorney to represent an indigent person where there is a conflict in legal representation in a matter involving multiple defendants and one of the defendants is represented by or through the Office of the Public Defender, or where the Office of the Public Defender declines to provide representation to an indigent person entitled to representation under this article.

counsel may be of substantial value in developing and presenting material which could affect the sentence; and (iv) that among the accused's rights at trial are the right to call witnesses in his behalf, the right to confront and cross-examine witnesses, the right to obtain witnesses by compulsory process, and the right to require proof of the charges beyond a reasonable doubt.

\* \* \*

f. *Record to Show Compliance.*

The docket entries or transcript shall affirmatively show compliance with this Rule."

It has been consistently held that the requirements of Rule 719 are mandatory, and compliance with them is required irrespective of the type of plea entered, or the lack of an affirmative showing of prejudice to the accused. *Manning v. State, supra; Taylor v. State,* 230 Md. 1; *Taylor v. State,* 20 Md. App. 404; *Wayne v. State, supra.*

It is manifest that Diggs did not have the assistance of counsel at the trial resulting in his conviction. Under the Rule the trial judge was obliged to request the Office of the Public Defender to designate or appoint counsel to represent Diggs in connection with the offenses charged unless Diggs was financially able to obtain counsel, or, if not, effectively waived his right to assistance of counsel. We can only conclude that Judge Baer accepted Diggs's declarations unequivocally made on both 27 July and 11 September that he was financially unable to obtain counsel. Our conclusion is predicated by the judge's inquiry whether Diggs had talked to the Public Defender; if Diggs were not indigent there would be no purpose in talking to the Public Defender. The judge's explanation of why the trial would proceed without defense counsel was: "I believe you have effectively waived your right to have an attorney because you were given notice at your last hearing that you would be tried today with or without a lawyer." Whether the judge had in

fact given such notice [6] is not material in the circumstances. There was nothing to show that as of 27 July and 11 September Diggs's representation that he was financially unable to obtain counsel was not true. Assuming, therefore, that he was indigent in the frame of reference of entitlement to appointment of counsel, neither the docket entries nor transcripts of the various proceedings affirmatively show compliance with Rule 719 as required by its § f. On the contrary, the transcripts affirmatively show that the trial judge did not comply with the Rule. Although Diggs did not indicate a *desire* to waive representation (rather it was apparent that he desired to have the assistance of counsel), it is obvious from the course pursued by the judge that he believed that Diggs indicated an *inclination*, implicitly at least, to waive representation by showing up for trial without counsel in the face of the judge's alleged admonition. Under § c of the Rule, the trial judge was then prohibited from proceeding on the basis that Diggs waived his right to counsel unless the judge determined after appropriate questioning in open court, that Diggs fully comprehended the four matters set out in the section. This the trial judge did not do. As the provisions of Rule 719 are obligatory, the sanction for noncompliance with them is the reversal of the judgments obtained at the trial and the grant of a new trial. We hold that the judge presiding at the post conviction hearing did not err in awarding Diggs a new trial.

The posture in which the case reaches us does not put into question whether Diggs could be found to have effectively waived his right to counsel by his conduct. If that issue, involving a constitutionally protected right, were before us, it would be our duty in determining whether the trial court made its decision within the required constitutional framework to apply the rule that "[w]hen constitutional

---

6. As indicated above, the transcript of the proceedings of 27 July does not reflect that Judge Baer so notified Diggs, despite the somewhat reluctant agreement of Diggs under questioning that the judge did so tell him. At the proceeding on 20 June, Judge James W. Murphy warned Diggs to "get your own counsel and be ready for trial that day [27 July] whether or not."

rights turn on the resolution of a factual dispute we are duty bound to make an independent examination of the evidence in the record." *Wiebking, et al. v. State,* 19 Md. App. 226, 233 quoting *Brookhart v. Janis,* 384 U. S. 1, 4, n. 4. What we are reviewing, however, is whether the post conviction hearing judge was correct in granting Diggs a new trial. He found that Diggs was entitled to a new trial because the trial judge did not comply with the provisions of Rule 719.[7] As we have indicated, if the trial judge did not comply with Rule 719 as to appointment of counsel, Diggs was entitled to a new trial. Whether there was compliance was a factual determination within the frame of reference of the Rule, not in the context of the federal constitution. Therefore, our review is within the ambit of Rule 1086. As there was credible evidence to support the finding of the post conviction hearing judge that the trial judge did not comply with Rule 719, the judgment of the post conviction hearing judge was not clearly erroneous on the evidence, and we may not set it aside.

*Order of 30 September 1974 affirmed.*

---

7. In the memorandum opinion included in the order of 30 September granting a new trial, the hearing judge said:

"Unfortunately the court is unable to find in the record the exact compliance with the provisions of Maryland Rule 719 which would justify forcing the petitioner to trial without counsel.

Consequently the court must find that the waiver of the petitioner's constitutional right to the assistance of counsel has not been demonstrated on the record to the extent which is made mandatory in *Taylor vs. State,* [20 Md. App. 404]."