PAUL EVERETTE BRUCE *v.* STATE
OF MARYLAND

[No. 959, September Term, 1974.]

*Decided June 5, 1975.*

The cause was argued before POWERS, GILBERT and
DAVIDSON, JJ.

*Robert N. Winkler, Assigned Public Defender,* for
appellant.

*Bruce C. Spizler, Assistant Attorney General,* with whom
were *Francis B. Burch, Attorney General, Sandra A.
O'Connor, State's Attorney for Baltimore County,* and
*Michael B. Sauer, Assistant State's Attorney for Baltimore
County,* on the brief, for appellee.

GILBERT, J., delivered the opinion of the Court.

According to Bernard Schwartz in *The American Heritage
History of the Law in America* at 33 (1974), the late John

Adams, in speaking of his oft-criticized, but highly successful defense of the British troops charged with the killings in the Boston Massacre, opined: "I have no hesitation that Council [sic] ought to be the very last thing that an accused person . . . [should lack] in a free society." Indeed, the right to counsel was thought of so strongly by this country's founding fathers that they provided in the Sixth Amendment, a part of "that classic inventory of human rights, the Bill of Rights",[1] that "In all criminal prosecutions the accused shall . . . have the Assistance of Counsel for his defence." It has been over two hundred years since John Adams uttered his words relative to the right to counsel, but the question of an accused's having counsel at trial still plagues us. *See, e.g., Gideon v. Wainwright,* 372 U. S. 335, 344, 83 S. Ct. 792, 93, 9 L.Ed.2d 799, 805, 93 A.L.R.2d 733 (1963); *Manning v. State,* 237 Md. 349, 206 A. 2d 563 (1965); *State v. Diggs,* 24 Md. App. 681, 332 A. 2d 283 (1975); *Guarnera v. State,* 20 Md. App. 562, 318 A. 2d 243 (1974); *Taylor v. State,* 20 Md. App. 404, 316 A. 2d 296 (1974); *English v. State,* 8 Md. App. 330, 259 A. 2d 822 (1969).

The case now before us had its origin in Woodlawn, Baltimore County, on the evening of June 24, 1974. At that time a County Police officer observed four men in the rear of the Holiday Inn. Paul Everette Bruce, the appellant, was identified by the officer as one of the four men, and more particularly, the man who was the driver of the motor vehicle in which the four left the area. It was later ascertained that a television set had been stolen from the Holiday Inn. An investigation by the police led to charges being lodged against the appellant for "outhouse" breaking.[2] Md. Ann. Code art. 27, § 32.

When Bruce was arraigned in the Circuit Court for Baltimore County on August 29, 1974, the following colloquy occurred:

---

1. B. Schwartz, *The American Heritage History of the Law in America* at 33 (1974).

2. Black's Law Dictionary (4th ed. 1968) defines "Outhouse" as: "Any house necessary for the purposes of life, in which the owner does not make his constant or principal residence. State v. O'Brien, 2 Root (Conn.) 516. . . ."

"THE COURT: Paul Bruce and Leroy Griffin. Which one is Paul Bruce?

BRUCE: I am.

THE COURT: How old are you, Mr. Bruce?

BRUCE: Twenty-nine.

THE COURT: And, Mr. Griffin, how old are you?

GRIFFIN: Thirty-one.

THE COURT: Have you gotten a copy of the charges against you?

BRUCE: Yes, sir.

GRIFFIN: Yes, sir.

THE COURT: Do you understand what you're charged with?

BRUCE: Right.

GRIFFIN: Yes.

THE COURT: Breaking into the Holiday Inn building on Belmont Avenue, western part of Baltimore County, and stealing a color television set, a twenty-one inch Westinghouse. The charge is breaking and entry of the Holiday Inn room and stealing a television set. Do you have a lawyer, Mr. Bruce?

BRUCE: Not now.

THE COURT: Do you work?

BRUCE: I'm in school.

THE COURT: Where do you go to school?

BRUCE: RETS Electronics School, Russell Street.

\* \* \*

THE COURT: How about you, Mr. Bruce, who do you live with?

BRUCE: Live with my wife.

THE COURT: She work?

BRUCE: Yes, she does.

THE COURT: Why haven't you gotten a lawyer?

BRUCE: I'm supposed to take a polygraph test September the 3rd.

THE COURT: Who told you that?

BRUCE: Officer Snyder and Hopkins.

MR. SAUER [Assistant State's Attorney]: Your Honor, that test was scheduled for July the 1st, the defendant failed to appear.

BRUCE: I was in traffic court that day.

THE COURT: Your address 3503 Plateau Avenue?

BRUCE: Yes, it is.

THE COURT: You're 4114 Bell?

GRIFFIN: Yes.

THE COURT: The police must have grave doubts as to the guilt of Paul Bruce if they're still talking in terms of giving him a lie detector test. Whose idea was that, does that file reflect?

MR. SAUER: I'll look, your Honor.

THE COURT: Whose idea was it about this lie detector test?

BRUCE: Officer Hopkins and Detective Sergeant — I don't know his last name.

THE COURT: Well, I can't see much excuse for Griffin not getting a lawyer, but, I think that if the police were volunteering to give me a lie detector test which might very well lead to the abandonment of the charge against me I don't know whether I'd rush out and get a lawyer. You have a car?

BRUCE: Yes, '74 Oldsmobile.

THE COURT: Where did you get the money? You're going to RETS?

BRUCE: My wife and I got it through the Community Action Agency in Baltimore.

THE COURT: You got a car through the Community —

BRUCE: No, my wife is working, she's a psychiatric nurse.

THE COURT: Well, you both have to get your own

lawyers. You've gotten copies of the charges against you, you both understand what you're charged with. The Court rules that as long as each one of you have a 1974 automobile and that you're not eligible for a lawyer at the taxpayer's expense you'll have to get your own lawyer.

BRUCE: But, your Honor, can I say something? If my innocence can be proven on the 3rd of September why should I get a lawyer?

THE COURT: Fine, if it's proved, if the State finds out that you're innocent on the 3rd of September then you won't need a lawyer, but, if you don't receive exoneration, if they don't drop the charge against you and it comes to trial you may need a lawyer and if you do that's your problem, you're going to have to get one. All I'm telling you is that if there's to be a lawyer to represent you you're the one going to have to get it, not the Public Defender. The Public Defender will not get you a lawyer and their regulations wouldn't permit it."

Subsequently, Bruce appeared before another judge on September 27, 1974. At that time the following transpired:

"THE COURT: . . . Are you Paul Everette Bruce?

BRUCE: Yes, sir.

THE COURT: Where is your lawyer?

BRUCE: I don't have one yet. I haven't retained one.

THE COURT: *Do you want to represent yourself?*

BRUCE: *No.*

THE COURT: Well, your trial is going to be called.

BRUCE: Well, Your Honor, as I told [the judge], I was not employed. I was in electronics school and it is a federally funded program. I don't have a job. I am just going to school.

THE COURT: What did you say? Would you repeat that, please?

MR. BRUCE: That I am in electronics school and it is a federal funded program and they pay you as you go to school. That is the only employment that I had.

THE COURT: He told you you had to employ counsel?

BRUCE: Yes, because I was driving a new car.

THE COURT: *You have not employed counsel so you are ready to go to trial, now; are you not?*

BRUCE: *No, sir. I am going to try to, my wife and I, to get the money to get an attorney.*

THE COURT: But, we gave you an opportunity, both of you, to employ counsel. So, you had your Constitutional Right to counsel. You chose not to hire one. Are you ready to proceed?

BRUCE: Yes, but I want to retain [counsel].

THE COURT: Well, you have already had an opportunity.

BRUCE: I didn't have the money then.

THE COURT: Well, that was determined at the hearing of August 29. . . .

BRUCE: Yes, but my wife wouldn't be able to get a loan until maybe two weeks from now.

THE COURT: You have already been given a month.

BRUCE: Yes, but she has to get it through the Credit Union. She has her card.

THE COURT: Yes, but neither one of you notified the State's Attorney and he has his witnesses here today ready for trial.

BRUCE: I never even got a summons to come to Court today.

THE COURT: You knew it would be assigned for trial.

BRUCE: Yes, sir, I knew but I never got a summons.

THE COURT: Well, we can proceed with trial. You both seem to be intelligent young men.

BRUCE: Your Honor, I would like to ask for a jury trial if it is possible.

THE COURT: I beg your pardon?

BRUCE: I would like to ask for a jury trial if it is possible.

THE COURT: Well, I have not gotten down to that point yet. I am trying to settle the point of counsel. After hearing all of the information, what does the State wish to do?

MR. SAUER: Well, Your Honor, the State is prepared today with its witnesses.

THE COURT: Yes, you have said that earlier. I realize the witnesses are in Court but I don't know who they are or what they consist of. What do you suggest now that you have heard the statements of the Defendants?

MR. SAUER: The State is prepared for trial.

THE COURT: I realize you are prepared for trial. What do you suggest insofar as the Defendants are concerned?

MR. SAUER: Well, they are not represented by counsel, Your Honor. There is no requirement —

THE COURT: Do you suggest that we try it now or postpone it?

MR. SAUER: The State is ready to try it right now.

\* \* \*

THE COURT: ... Now, Mr. Bruce, you have a Constitutional Right to a trial by a jury, and that means you could not be convicted without the unanimous consent of every member of the jury. You also have a right to be tried by a judge. What is your desire?

BRUCE: Jury trial.

THE COURT: You pray a jury trial?

BRUCE: Yes, sir.

THE COURT: All right. I suggest that we go ahead with the jury trial.

MR. SAUER: The State has its witnesses here. The State would like to proceed in that case.

THE COURT: I say, couldn't the Judge that hears the jury trial try them both?

MR. SAUER: Well, Your Honor, one is jury and one is nonjury.

THE COURT: Yes, but he hears the facts before the jury and he can pick up the nonjury case right after; could he not?

MR. SAUER: That is correct, Your Honor.

THE COURT: I think that if he could hear the same witnesses, hear the jury trial and then hear the nonjury trial right after it —

MR. SAUER: Very well, Your Honor.

THE COURT: Some inquiry ought to be made if we can do it today.

MR. SAUER: Your Honor, in the hypothetical sense, if there is no jury trial or no jury available today—

THE COURT: ... There may or may not be a jury, so inquiry can be made.

MR. SAUER: I will make that right now, Your Honor.

THE COURT: You gentlemen wait here in Court until something is determined on that.

BRUCE: Your Honor, is it okay if I call my wife so that she can make arrangements to have the lawyer here before the jury trial starts?

THE COURT: Yes.

(Proceedings suspended.)

MR. SAUER: Your Honor, the matter of Bruce and Griffin, it is my understanding that both Defendants wish to proceed nonjury. The Defendant changed his mind, so the State would be prepared to try both cases.

THE COURT: The witnesses are not excused.

MR. SAUER: I have not excused any witnesses.

(Whereupon, the case was transferred . . . for trial.) " (Emphasis supplied).

After waiver of jury trial, the third judge said:

"THE COURT: All right; I'll accept your waiver of a jury trial. It has already been determined . . . that you should have employed your own counsel and therefore, you are to represent yourself. Be seated; listen to the testimony. You have the right to cross-examine the witnesses; do you understand that?

BRUCE: Yes.

GRIFFIN: Yes.

THE COURT: All right; sit down."

Bruce was sentenced to three years imprisonment and has appealed to this Court.

As we see it, Bruce was denied both his federal and state constitutional right to be represented by counsel. The Circuit Court for Baltimore County was wrong and must be reversed. Maryland Rule 719 provides:

"a. *How Made.*

Arraignment shall be conducted in open court and shall consist of reading the indictment to the accused or stating to him the substance of the charge and calling on him to plead thereto. The accused shall be furnished a copy thereof as soon as practicable after it shall have been prepared and in any event within a reasonable time before he is called upon to plead, and at the expense of the prosecuting authority.

b. *Appointment of Counsel.*

1. Advice by Court.

If at any stage of the proceeding, the accused appears in court without counsel, the court shall advise him of his right to counsel.

### 2. When Required — Conditions.

*Unless the accused waives his right to be represented by counsel or is financially able to obtain counsel,* the court shall request the Office of the Public Defender to designate or appoint counsel to represent the accused if the offense charged is a serious crime, as defined in Code, article 27A (Public Defender)." (Emphasis supplied).

The State vigorously argues that Md. Ann. Code art. 27A, § 2 (f) mandates that in order for the trial court to request the Public Defender to designate or appoint counsel, there must be a finding that the accused is "indigent". The accused, as the State sees it, must, on oath or affirmation, subscribe and state in writing that he is financially unable, without undue hardship, to provide for the full payment of an attorney and all other necessary expenses of legal representation.

The State then suggests that "at no time throughout the arraignment or the trial proceedings did the appellant allege he was unable to afford private counsel nor did he request the services of the Public Defender nor did he take exception to the finding of the trial court that he was not indigent. . . . Thus the issue is not properly before this Court . . . Md. Rule 1085." The record, however, reveals that Bruce clearly expressed to the second judge Bruce's desire to be represented by counsel, and that he did not want to represent himself. We interpret Bruce's remark as an "objection", and thus a preservation of the issue for our review.

A reading of the above quoted portions of the first transcript demonstrates that the first judge was led to the conclusion that Bruce could afford to retain private counsel because of Bruce's "ownership" of a 1974 Oldsmobile. No effort was made by the first judge nor his successors to inquire into the extent of the "ownership". It may be that Bruce owned the motor vehicle absolutely, or that he owned it with his wife or another. It may be that the vehicle was so heavily encumbered that the "ownership" amounted to

little more than mere fiction. The record does not disclose enough facts for one to conclude that Bruce was or was not able to retain private counsel. Hence, the first judge's decree relative to Bruce's right to appointed counsel was obviously founded on shifting sand rather than a concrete base. In short, there was not enough data available to make a sound judgment.

The State, on oral argument, contended that the first judge's decision did not deprive Bruce of his right to seek the services of the Public Defender. The State reasons that if Bruce felt the judge was wrong, he should have gone to the Public Defender and, for himself, ascertained his qualification, *vel non*, for those services. We do not see it in the same light. When the first judge told Bruce that Bruce could not, at public expense, have counsel appointed, there would be little likelihood that Bruce would dispute that holding and set out to determine whether the judge was correct.

Patently, Bruce did not waive his right to an attorney. This is demonstrated by the fact that Bruce told the second judge of Bruce's desire to have an attorney, but the second judge was unfortunately lured into the same erroneous path as the first judge. By the time the matter reached the third and final judge, the die was cast. The trial judge, without knowing of the precise nature of the prior happenings, proceeded on the theory that there had been a proper determination that Bruce did not qualify for the services of the Public Defender. We have then before us a "Tinker to Evers to Chance" play, but unlike that well-known infield trio, in this case everybody dropped the ball.

*Judgment reversed and case remanded for a new trial.*