523 A.2d 597

Marvin PARREN and David Bright

v.

STATE of Maryland.

No. 91, Sept. Term, 1986.

Court of Appeals of Maryland.

April 6, 1987.

Arthur A. DeLano, Jr., Asst. Public Defender (Alan H. Murrell, Public Defender, on the brief), Baltimore, for appellant.

Valerie J. Smith, Asst. Atty. Gen. (Stephen H. Sachs, Atty. Gen., on the brief), Baltimore, for appellee.

Argued before MURPHY, C.J., ELDRIDGE, COLE, RODOWSKY, COUCH and McAULIFFE, JJ., and CHARLES E. ORTH, Jr., Associate Judge of the Court of Appeals (retired) Specially Assigned.

CHARLES E. ORTH, Jr., Specially Assigned.

# I

## (A)

"The Sixth Amendment to the United States Constitution and Article 21 of the Maryland Declaration of Rights guarantee a right to counsel, including appointed counsel for an indigent, in a criminal case involving incarceration." *Rutherford v. Rutherford*, 296 Md. 347, 357, 464 A.2d 228 (1983).[1] The constitutional guarantees encompass not only

---

1. "In all criminal prosecutions, the accused shall enjoy the right ... to have the Assistance of Counsel for his defence." U.S. Const. amend. VI. The right is guaranteed by the Fourteenth Amendment to defend-

the right of a defendant to the effective assistance of a duly licensed attorney at law but also the right of a defendant to appear *in propria persona. Faretta v. California,* 422 U.S. 806, 807, 95 S.Ct. 2525, 2527, 45 L.Ed.2d 562 (1975); *Leonard v. State,* 302 Md. 111, 119, 486 A.2d 163 (1985).[2] The right of self-representation is independent of the right to the assistance of counsel. *Faretta,* 422 U.S. at 819 n. 15, 95 S.Ct. at 2533 n. 15. The rights "are mutually exclusive and the defendant cannot assert both simultaneously." *Leonard,* 302 Md. at 119, 486 A.2d at 166. The right to counsel has been zealously protected by the Supreme Court as a fundamental constitutional right. It is basic to our adversary system of criminal justice. *Faretta* 422 U.S. at 818, 95 S.Ct. at 2532. Although it may be knowingly and voluntarily waived, the courts indulge every reasonable presumption against its waiver; acquiescence in the loss of such a right is never presumed. *Johnson v. Zerbst,* 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461 (1938). Nevertheless, the right to self-representation has been long respected and is supported by centuries of consistent history. *Faretta* 422 U.S. at 812–832, 95 S.Ct. at 2529–39. "The right to appear *pro se* exists to affirm the dignity and autonomy of the accused and to allow the presentation of what may, at least occasionally, be the accused's best possible defense." *Leonard v. State,* 302 Md. at 121, 486 A.2d at 168, *quoting McKaskle v. Wiggins,* 465 U.S. 168, 176–177, 104 S.Ct. 944, 949–50, 79 L.Ed.2d 122 (1984).

---

ants in the criminal courts of the states. *Gideon v. Wainwright,* 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963); *Argersinger v. Hamlin,* 407 U.S. 25, 92 S.Ct. 2006, 32 L.Ed.2d 530 (1972).

"[I]n all criminal prosecutions, every man hath a right ... to be allowed counsel...." Md. Const. Declaration of Rights, art. 21.

This Court has not distinguished between the rights so guaranteed. *Harris v. State,* 303 Md. 685, 695 n. 3, 496 A.2d 1074 (1985). "The right to counsel provisions of Article 21 of the Maryland Declaration of Rights ... are in *pari materia* with the Sixth Amendment." *Sites v. State,* 300 Md. 702, 712 n. 3, 481 A.2d 192 (1984).

2. The right to appear *pro se* is recognized as to federal cases by statute. "[P]arties may ... conduct their own cases personally or by counsel...." 28 U.S.C. § 1654 (1982).

**(B)**

The term "hybrid representation" has appeared in several opinions of the Court of Special Appeals and was said in *Callahan v. State,* 30 Md.App. 628, 633, 354 A.2d 191, *cert. denied,* 278 Md. 718 (1976), to describe participation in a criminal trial by a defendant as his "own co-counsel." *See Wilson v. State,* 44 Md.App. 318, 328, 408 A.2d 1058 (1979), *cert. denied,* 287 Md. 758 (1980); *Beard v. State,* 42 Md. App. 276,. 288, 399 A.2d 1383, *cert. denied,* 285 Md. 727 (1979). As we shall see, the concept of hybrid representation played an important role in the decision of the intermediate appellate court in the case *sub judice, Bright v. State,* 68 Md.App. 41, 509 A.2d 1227 (1986). Hybrid representation is apparently considered to encompass both the participation of the defendant in the conduct of his trial when he had not effectively waived the assistance of an attorney to defend him, and the participation by an attorney in the conduct of the trial when the defendant was defending *pro se.*

The term "hybrid representation" and the designation of a defendant as "co-counsel" are misleading. There is no right vested in a defendant who has effectively waived the assistance of counsel to have his responsibilities for the conduct of the trial shared by an attorney. "The Sixth Amendment does not give any indication that hybrid representation is a right of constitutional dimensions," and no such right is bestowed by statute. *United States v. Hill,* 526 F.2d 1019, 1025 (10th Cir.1975), *cert. denied,* 425 U.S. 940, 96 S.Ct. 1676, 48 L.Ed.2d 182 (1976). Nor is there a right bestowed upon a defendant who has not effectively waived his entitlement to the assistance of counsel to share the responsibilities for the management of the trial with his attorney. As we have noted, the right to counsel and the right to defend *pro se* cannot be asserted simultaneously. The two rights are disjunctive. There can be but one captain of the ship, and it is he alone who must assume responsibility for its passage, whether it safely reaches the destination charted or founders on a reef. This does not

mean that a defendant who has ineffectively waived the assistance of counsel cannot in any way participate in the conduct of the trial. Nor does it follow that a defendant appearing *pro se* may not have a lawyer participate to any extent in the trial. Such participation may be permitted in the discretion of the presiding judge under his general power to control the conduct of the trial. *Wilson v. State,* 44 Md.App. at 330–331, 408 A.2d at 1064–65. But in either case the participation never reaches the level of "representation" nor does the participant attain the status of "co-counsel." When a defendant appears *pro se,* it is he who calls the shots, albeit, perhaps, with the aid, advice and allocution of counsel in the discretion of the trial judge. When a defendant is represented by counsel, it is counsel who is in charge of the defense and his say as to strategy and tactics is generally controlling, but again with such participation by the defendant as the trial judge deems appropriate.

■ This Court has noticed the term "hybrid representation." In *Colvin v. State,* 299 Md. 88, 101, 472 A.2d 953, *cert. denied,* 469 U.S. 873, 105 S.Ct. 226, 83 L.Ed.2d 155 (1984), we said that the defendant was not seeking self-representation but was "at best seeking 'hybrid' representation." In *Leonard v. State,* 302 Md. at 126, 486 A.2d at 170, we observed that the facts dispelled "any contention that [the defendant] was seeking hybrid representation." In the context in which the term "hybrid representation" appeared in *Colvin* and *Leonard,* there is no indication, and we hereby expressly refute, that we recognized "hybrid representation" as a third classification of the right to counsel. As we have explained above, there are only two types of representation constitutionally guaranteed—representation by counsel and representation *pro se*—and they are mutually exclusive. In short, "[a] criminal defendant does not have an absolute right to both self-representation *and* the assistance of counsel." *United States v. Halbert,* 640 F.2d 1000, 1009 (9th Cir.1981) (emphasis in original).

### (C)

■ When an accused is constitutionally entitled to the assistance of counsel, the right attaches to him without any affirmative action on his part. On the other hand, when an accused desires to represent himself he must assert that right, and its grant is conditioned upon a valid waiver of the right to assistance of counsel. *Leonard v. State*, 302 Md. at 119, 486 A.2d at 166.[3] The standard of proof applicable to a waiver of the right to counsel was enunciated by the Supreme Court in *Johnson v. Zerbst*, 304 U.S. at 464, 58 S.Ct. at 1023. It was explicated in *Von Moltke v. Gillies*, 332 U.S. 708, 723–724, 68 S.Ct. 316, 323, 92 L.Ed. 309 (1948) and summarized in *Faretta v. California*, 422 U.S. at 835, 95 S.Ct. at 2541. This Court has adopted a rule to implement the constitutional guarantees. Present Md. Rule 4–215. All of this is discussed *infra*.

### II

David Bright and Marvin Parren were convicted by a jury at a joint trial in the Circuit Court for Baltimore City of certain felonies and misdemeanors charged in a number of indictments returned against them. The indictments resulted from the defendants' involvement in a brouhaha in the Maryland Penitentiary where they were serving time for the commission of other offenses. They appealed from the judgments entered, and the Court of Special Appeals affirmed. *Bright v. State*, 68 Md.App. at 41, 509 A.2d at 1227. We granted their petition and the State's cross-petition for certiorari.

### (A)

When Bright and Parren first appeared in court in this case they had been provided counsel by the Public Defender. The docket entries and a transcript of the proceedings at their arraignment reflect no more than the entry of the

---

**3.** For waiver of the right to counsel by conduct, *see Crowder v. State*, 305 Md. 654, 656–657, 506 A.2d 240 (1986).

appearance of counsel, pleas of not guilty and the setting of a date for trial.

When the case came on for trial there ensued a prolonged discussion, carried over until the morning of the next day, concerning the representation of the defendants. The court, the defendants, counsel and the prosecutor all took an active part. Although at times inevitably confusing, the transcript of the proceedings, when alembicated, clearly establishes that the matter of representation was resolved in this way:

1) Each defendant discharged his counsel of record.

2) Each defendant tendered a waiver of his right to counsel which was accepted by the court.

3) Each defendant asserted and was granted his right to defend *pro se.*

4) Counsel could participate in the trial only in a standby advisory capacity to the extent permitted by the court.

The resolution of the matter of representation, finally accepted with various degrees of enthusiasm by all concerned, was reached by the judge over the strenuous opposition of the prosecutor. It was arrived at in light of the comments and assertions of the defendants as explicated by their counsel, and after strong and persistent caveats by the court supported by plainly worded cautions and warnings as to the dangers and pitfalls of self-representation. The question of whether each defendant truly desired to proceed without an attorney was placed squarely on the record by the judge. The transcript shows that after protracted discussion the judge addressed each defendant as follows:

THE COURT: You still want to represent yourself?

DEFENDANT PARREN: Yes.

THE COURT: You still want to represent yourself?

DEFENDANT BRIGHT: Yes.

Before trial continued the next day counsel who had been appointed for Bright placed on the record that both he and Bright's mother had attempted without success to have Bright change his mind about representing himself. Coun-

sel asserted that he could "still step in at this stage and try the case for him," that he had been prepared to try the case since the original date for trial a month past. Counsel said that Bright "has indicated to me that he ... understands everything. He does wish for me to be here to assist him if he has any questions, but he does wish to proceed with his own case." Bright expressly declared that this was correct.

Shortly thereafter, Parren's appointed counsel told the court:

> I also discussed with Mr. Parren trying his case. He indicates that he does wish to try his own case with me assisting him.

Parren agreed: "That is correct." Counsel said: "Let the record show that I am prepared to try the case, but Mr. Parren has elected not to have it that way, only with me assisting him." The court interposed a final caveat: "I urge them not to proceed this way. I think it is not in their best interest. They seem to be adamant. I will permit them under the rules." The trial proceeded with the representation of the defendants *pro se* as they desired.

### (B)

■ In deciding the appeal the Court of Special Appeals stumbled over the term "hybrid representation." It conceded that the accused thought that they were representing themselves at the trial. *Bright,* 68 Md.App. at 45, 509 A.2d at 1229. It noted that the trial court characterized the right that it gave "as one of self-representation" and conducted a "quasi waiver-of-counsel inquiry." *Id.* at 48, 509 A.2d at 1231. But, it asserted, "[self-representation] was a mischaracterization." *Id.* It maintained that "[t]hey did not truly represent themselves.... What they received has become known as 'hybrid representation'—a form of representation in which the defendant participates in his own defense while also retaining the assistance of counsel." *Id.* at 45, 509 A.2d at 1229. Whether a court in a given case grants *pro se* representation or hybrid representation, opined the court, is a question of degree.

"[w]e must look at the facts and circumstances surrounding the court's response to such a request [for self-representation with assistance of counsel]. If the totality of circumstances indicate a defendant was granted the right to retain the assistance of counsel while assuming a role in his or her own defense, even though the court may term the right granted one of 'self-representation,' the exact assistance granted may still be one of hybrid representation." *Id.* at 47, 509 A.2d at 1230.

This concept assumes that there are three classifications of the right to legal representation in a criminal cause—(1) by counsel, (2) by the defendant *pro se,* and (3) by both counsel and the defendant. The concept fails because, as we have seen *supra,* there are only two rights of representation, by counsel or *pro se.* They are independent of each other and may not be asserted simultaneously. The right which the Court of Special Appeals held was granted simply does not exist in the form in which the court contemplated, that is, as shared responsibility for the management of the defense.

The problems arising from such a concept of hybrid representation are apparent. It could not be ascertained by anyone, including the trial court itself, until after the trial whether the defendant had enjoyed representation by counsel, self-representation or hybrid representation, for "[t]he question is one of degree." *Id.* at 47, 509 A.2d at 1230. Neither the court, nor the defendant, nor counsel, nor the prosecutor would know until the record of the trial was examined who was actually responsible for the conduct of the defense and in control of deciding questions and resolving problems as they arose. As Wilner, J., said in his concurring opinion:

"There is ... no clear boundary line between hybrid representation and self-representation. Moreover, when, as in this case, a request for some degree of self-representation is made before trial, there is no way that the court ever can know on what side of the murky line the matter will fall.... [T]here are a number of factors to

be considered, all of which are necessarily considered *ex post facto.*" *Id.* at 57, 509 A.2d at 1235.

This points up that the concept of hybrid representation as a "sharing in the awesome responsibilities of defending a criminal charge," *id.* at 49, 509 A.2d at 1231 is impracticable and inadvisable, even if it were constitutionally recognized. Furthermore, the Court of Special Appeals, apparently sensing that the concept it espoused was not without real problems in application, urged that in cases in which a defendant asks to participate in some way in his own defense at any stage of a proceeding, the court should conduct the full waiver inquiry required by Rule 4–215. *Id.* at 49 and at 57, 509 A.2d at 1231 and at 1235 (Wilner, J., concurring). To what real purpose is not readily apparent. If the waiver inquiry establishes that the waiver tendered is effective, the defendant has the right to proceed *pro se.* If the inquiry shows that the waiver is not knowingly and intelligently made, the defendant must be represented by counsel. If, as the Court of Special Appeals apparently believes, when counsel has some participatory role there may be hybrid representation, then, by its decisions, no waiver inquiry is necessary. It seems that the intermediate court's notion is that the waiver inquiry should be conducted as a hedge in the event that on appeal the appellate court finds that the participation by counsel was not so extensive as to amount to the concept of a hybrid representation right. Our rules do not envision a waiver inquiry for such purpose. We think it better that the trial court simply follow the clear mandates of Rule 4–215.

The Court of Special Appeals acknowledged that Bright and Parren "requested before trial to participate in varying degrees in their own defense." 68 Md.App. at 47, 509 A.2d at 1230. But despite its urging that in such circumstance the trial judge conduct a full waiver hearing under Rule 4–215, it completely ignored the waiver inquiry conducted by the trial court. It did so on a premise which is clearly not supported by the record. It conceded that the trial court characterized the right it gave the defendants "as one

of self-representation." 68 Md.App. at 48, 509 A.2d at 1231. It opined this was a "mischaracterization," even though the court conducted a "waiver-of-counsel inquiry," and accepted the waivers. *Id.* It accepted that the defendants were "free to accept or reject [the] advice" of counsel. *Id.* Nevertheless, it held, the defendants "were not granted the right to exclusively represent themselves." *Id.* What they requested and received, the Court of Special Appeals insisted, was a hybrid representation. This conclusion is, of course, wrong. We reiterate that it is not supported by the record or the law. Bright and Parren had only the right to self-representation or to representation by counsel.

On the incorrect premise that Bright and Parren had been afforded a hybrid representation rather than self-representation, the Court of Special Appeals concluded that inasmuch as the defendants were never without the assistance of counsel throughout their trial, and since counsel served as a continuous, accessible source of legal advice, assertions that "the court failed to conduct proper waiver inquiries are without merit." *Id.* at 49, 509 A.2d at 1231. The court relied on its prior opinion delivered in *Beard v. State,* 42 Md.App. 276, 399 A.2d 1383, which declared, at 288, 399 A.2d at that the waiver inquiry under Rule 723 (now Rule 4–215) was not applicable in situations of "hybrid representation." We note that the rule does not recognize such an exception. In any event, as we have emphasized, there is no such classification as hybrid representation by counsel.

### III

The petitions for certiorari call upon us to determine whether the waivers by the defendants of their right to counsel were effective.[4]

---

**4.** The petition of Bright and Parren asks:

> Did the trial court err in failing to conduct a proper waiver of counsel inquiry before permitting [them] to conduct their own defense.

The State's cross-petition poses:

(A) ·

We noted *supra* that the standard applicable to a waiver of the constitutional right to counsel was enunciated by the Supreme Court in *Johnson v. Zerbst*, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461, explicated in *Von Moltke v. Gillies*, 332 U.S. 708, 68 S.Ct. 316, 92 L.Ed. 309, and summarized in *Faretta v. California*, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562. The Court in *Johnson* said:

It has been pointed out that "courts indulge every reasonable presumption against waiver" of fundamental constitutional rights and that we "do not presume acquiescence in the loss of fundamental rights." A waiver is ordinarily an intentional relinquishment or abandonment of a known right or privilege. The determination of whether there has been an intelligent waiver of the right to counsel must depend, in each case, upon the particular facts and circumstances surrounding that case, including the background, experience, and conduct of the accused. 304 U.S. at 464, 58 S.Ct. at 1023 (footnotes omitted).

The plurality opinion in *Von Moltke* explained:

We have said: "The constitutional right of an accused to be represented by counsel invokes, of itself, the protection of a trial court, in which the accused—whose life or liberty is at stake—is without counsel. This protecting duty imposes the serious and weighty responsibility upon the trial judge of determining whether there is an intelligent and competent waiver by the accused." To discharge this duty properly in light of the strong presumption against waiver of the constitutional right to counsel, a judge must investigate as long and as thoroughly as the circumstances of the case before him demand. The fact that an accused may tell him that he is informed of his right to counsel and desires to waive this right does not automatically end the judge's responsibility. To be valid

---

Whether the trial court's inquiry into the [defendants'] request for self-representation, which substantially complied with Maryland Rule 4–215, was adequate to satisfy the requirements of that Rule?

such waiver must be made with an apprehension of the nature of the charges, the statutory offenses included within them, the range of allowable punishments thereunder, possible defenses to the charges and circumstances in mitigation thereof, and all other facts essential to a broad understanding of the whole matter. A judge can make certain that an accused's professed waiver of counsel is understandingly and wisely made only from a penetrating and comprehensive examination of all the circumstances under which such a plea is tendered. 332 U.S. at 723–724, 68 S.Ct. at 323 (citations omitted).

*Faretta* reminded:

When an accused manages his own defense, he relinquishes, as a purely factual matter, many of the traditional benefits associated with the right to counsel. For this reason, in order to represent himself, the accused must "knowingly and intelligently" forgo those relinquished benefits.... Although a defendant need not himself have the skill and experience of a lawyer in order competently and intelligently to choose self-representation, he should be made aware of the dangers and disadvantages of self-representation, so that the record will establish that "he knows what he is doing and his choice is made with eyes open." 422 U.S. at 835, 95 S.Ct. at 2541 (citations omitted).

When the defendants tendered their respective waivers of counsel, the court examined each defendant. With respect to Bright the court ascertained that he had a ninth grade education, that he could read and write, that he was not "under the influence of any drugs or alcohol," that he had never been in a mental institution or suffered from any mental disorder, and that he understood that "a lawyer can provide very adequate and good service. They know when to object. They know when questions are leading, what evidence should be admissible. They are trained in that." The court continued:

[S]ometimes a witness will talk for an hour saying something that is objectionable. It gets in. If you don't

object, I can't represent you. I can't stop that witness. You have to do that. You understand the difficulty? Bright responded: "Yes, I understand." The court held that there was an intelligent waiver of counsel.

With respect to Parren the court ascertained that he had an eighth grade education, that he could read and write, that he was not under the influence of any drugs or alcohol, that he had never been in any mental institution or suffered from any mental disorder, and that he had "been reading law," and, "[t]o a small degree," had "some familiarity with the law." Parren claimed to understand that "a lawyer can do certain things, such as object to evidence, object to the State introducing evidence which is not permissible under our rules." The judge pursued the subject:

> There are certain questions that are leading that shouldn't be asked, certain questions that are not germane to what we are testifying. All of these questions a lawyer is trained to object to and knows how.

The court asked Parren: "You understand you are giving up that right?" Parren answered: "Yes." The court again turned to Bright who also said that he understood. Bright further said that he understood that

> if you give an objection, you are bound like any other lawyer. If you object because of A, let's say, and I overrule you, even though that evidence was objectionable because of B, C, or D, the fact that you gave a reason for yours, and it is overruled for that reason, doesn't mean that evidence was illegal because it came in anyway.

The court went on in like vein and Parren said he understood. The court permitted both Bright and Parren to defend *pro se.*

It may be that on the independent constitutional appraisal which we must make when the violation of a fundamental constitutional right is claimed, *Davis v. North Carolina,* 384 U.S. 737, 86 S.Ct. 1761, 16 L.Ed.2d 895 (1966); *Watson v. State,* 282 Md. 73, 84, 382 A.2d 574, *cert. denied,* 437 U.S.

908, 98 S.Ct. 3100, 57 L.Ed.2d 1140 (1978), the entire record would be sufficient to show that the waivers of counsel here met the *Johnson—Von Moltke—Faretta* standard. It is patent that the defendants knew that they had a right to counsel and were aware of the charges, which had been read to them in open court, and that they had copies of the indictments. Their background, experience and conduct indicated that they were not novices to the criminal justice system. As the State points out, they were confined in the segregation section of the maximum security Maryland Penitentiary and had substantial criminal records. They made numerous pre-trial motions *pro se* which they personally argued or for which they provided supporting argument. They cited specific sections of the Maryland Constitution and the Maryland Code. Bright referred to and discussed certain requirements of Rule 723 (now Rule 4–215). They took an active role in the preparation of their defense, both alone and with counsel. They not only expressly made known their election to waive counsel but insisted that the waiver be honored in the face of the strenuous advice of the court and counsel and the plea of Bright's mother to the contrary. The court certainly made them fully "aware of the dangers and disadvantages of self-representation." *Faretta,* 422 U.S. at 835, 95 S.Ct. at 2541. The short of it is that it appears that they believed that they were better able to present their defense than counsel and that they desired and were prepared to conduct it *in propria persona.*

Despite the fact that the examination by the court was not as "penetrating and comprehensive" as may be desired, in the contemplation of all of the circumstances under which the waivers were tendered, one would be hard pressed to conclude that, as a practical matter, neither Bright nor Parren did not know what he was doing or that the choice of either for self-representation was not made with eyes open. What gives pause in a determination of whether the constitutional standard was satisfied is that the record does not conclusively show that the defendants had "an appre-

hension of ... the range of allowable punishments," *Von Moltke,* 332 U.S. at 724, 68 S.Ct. at 323, for the crimes charged.[5] There is nothing in the record to establish that the defendants were told by the court or by counsel of the penalties involved. It appears that at one stage of the proceedings, far removed from the waiver inquiries, the judge commented during a discussion of Bright's claim that the counts of assault with intent to murder and attempted murder were duplicated, that the offenses were different. The judge said:

One of the differences if I recall, you can get life imprisonment. The other one is statutorily set.

He did not identify which crime it was that he recalled authorized life imprisonment. The State further notes that during another argument on a pre-trial motion by the defendants, Bright cited the section of the Maryland Code which sets forth the penalty for assault with intent to murder. In any event, the State suggests that the failure of a court to inform a defendant of all the matters encompassed in an effective waiver is not necessarily fatal, if the circumstances demonstrate that the waiver was intelligent and competent. It refers to *United States ex rel. Nieves v. O'Leary,* 606 F.Supp. 1478, 1482–1484 (N.D.Ill.1985); *Fowler v. United States,* 411 A.2d 618, 622–623 (D.C.App.), *cert. denied,* 446 U.S. 985, 100 S.Ct. 2967, 64 L.Ed.2d 841 (1980); *United States ex rel. Konigsberg v. Vincent,* 526 F.2d 131 (2d Cir.1975), *cert. denied,* 426 U.S. 937, 96 S.Ct. 2652, 49 L.Ed.2d 388 (1976); *United States v. Rosenthal,* 470 F.2d 837, 844–845 (2d Cir.), *cert. denied,* 412 U.S. 909, 93 S.Ct. 2298, 36 L.Ed.2d 975 (1972); *Townes v. United States,* 371 F.2d 930, 932–934 (4th Cir.1966), *cert. denied,* 387 U.S. 947, 87 S.Ct. 2083, 18 L.Ed.2d 1335 (1967). We note that the majority of these cases were decided in the light of a

---

**5.** The offenses charged in the various indictments, as read by the clerk in open court at the direction of the judge, included assault with intent to murder, attempted murder, assault, wearing a concealed deadly weapon, rogue and vagabond, and carrying openly a deadly weapon with intent to injure.

federal rule which recognizes waiver of counsel but does not spell out therein a procedure to be followed to effect it.[6]

## IV

### (A)

■ The right of an accused to the effective assistance of counsel and the correlative right to self-representation "are not legal formalisms.  They rest on considerations that go to the substance of an accused's position before the law...." *Faretta v. California,* 422 U.S. at 815, 95 S.Ct. at 2531, *quoting with approval* dictum in *Adams v. United States ex rel. McCann,* 317 U.S. 269, 279–280, 63 S.Ct. 236, 241–42, 87 L.Ed. 268 (1942).  The worth of these great constitutional safeguards is not to be impaired; they must be honored out of "that respect for the individual which is the lifeblood of the law." *Faretta* at 834, 95 S.Ct. at 2540, *quoting Illinois v. Allen,* 397 U.S. 337, 350–351, 90 S.Ct. 1057, 1064, 25 L.Ed.2d 353 (1970) (Brennan, J., concurring). The executive, legislative and judicial branches of the government of this State have recognized these two basic fundamental rights as among the most important concepts inherent in our system of justice.  The legislature created the Office of Public Defender "to provide for the realization of the constitutional guarantees of counsel in the representation of indigents ... in criminal and juvenile proceedings...."  Md.Code, Art. 27A, §§ 1–14 (1957, 1986 Repl. Vol.).  In excess of 18 million dollars was appropriated last year to enable the Public Defender to carry out his duties.

---

**6.**  Fed.R.Crim.P. 44 reads in pertinent part:

(a) RIGHT TO ASSIGNED COUNSEL.  Every defendant who is unable to obtain counsel shall be entitled to have counsel assigned to represent him at every stage of the proceedings from his initial appearance before the federal magistrate or the court through appeal, unless he waives such appointment.

The United States Court of Appeals for the Fourth Circuit observed that in determining that a defendant's waiver is effective "no particular form of interrogation is required." *United States v. King,* 582 F.2d 888, 890 (4th Cir.1978), *citing United States v. Townes,* 371 F.2d 930, 934 (4th Cir.1966), *cert. denied,* 387 U.S. 947, 87 S.Ct. 2083, 18 L.Ed.2d 1335 (1967).

This Court has adopted rules to insure that the rights are not violated. One of these rules, now designated Rule 4–215, concerns "Waiver of Counsel." It establishes a comprehensive scheme covering a wide range of matters pertaining to waiver. The Rule details the precise procedure to be followed as to the "First Appearance in Court Without Counsel," § (a); "Express Waiver of Counsel," § (b); "Waiver of Counsel by Failure to Obtain Counsel," § (c); and "Discharge of Counsel—Waiver," § (d).[7] Section (d) prescribes:

> If a defendant requests permission to discharge an attorney whose appearance has been entered, the court shall permit the defendant to explain the reasons for the request. If the court finds that there is a meritorious reason for the defendant's request, the court shall permit the discharge of counsel; continue the action if necessary; and advise the defendant that if new counsel does not enter an appearance by the next scheduled trial date, the action will proceed to trial with the defendant unrepresented by counsel. If the court finds no meritorious reason for the defendant's request, the court may not permit the discharge of counsel without first informing the defendant that the trial will proceed as scheduled with the defendant unrepresented by counsel if the defendant discharges counsel and does not have new counsel. If the court permits the defendant to discharge counsel, it shall comply with subsections (a)(1)–(4) of this Rule if the docket or file does not reflect prior compliance.

Subsections (1)–(4) of § (a) read:

> At the defendant's first appearance in court without counsel, the court shall:

---

**7.** The Court of Appeals by Order dated 6 April 1984, approved and adopted effective 1 July 1984, a revision of the Maryland Rules. Former Rule 723 was designated Rule 4–215. The sections and titles above are as they appeared at the time of the trial in this case.

The Rule as revised was amended 7 April 1986, effective 1 July 1986. Former § (d) is now § (e). Section (c) is now entitled "Waiver by Inaction—District Court" and § (d) is entitled "Waiver by Inaction—Circuit Court."

(1) Make certain that the defendant has received a copy of the charging document containing notice as to the right to counsel.

(2) Inform the defendant of the right to counsel and of the importance of assistance of counsel.

(3) Advise the defendant of the nature of the charges in the charging document, and the allowable penalties, including mandatory or minimum penalties,[8] if any.

(4) Conduct a waiver inquiry pursuant to section (b) of this Rule if the defendant indicates a desire to waive counsel.

Under § (b) a waiver inquiry was to be conducted in accordance with these prescriptions:

[T]he court may not accept the waiver until it determines, after an examination of the defendant on the record conducted by the court, the State's Attorney, or both, that the defendant is knowingly and voluntarily waiving the right to counsel. If the file or docket does not reflect compliance with section (a) of this Rule, the court shall comply with that section as part of the waiver inquiry. The court shall ensure that compliance with this section is noted in the file or on the docket. At any subsequent appearance of the defendant before the court, the docket or file notation of compliance shall be prima facie proof of the defendant's express waiver of counsel. After there has been an express waiver, no postponement of a scheduled trial or hearing date will be granted to obtain counsel unless the court finds it is in the interest of justice to do so.

When Bright and Parren indicated a desire to proceed without their respective counsel and requested permission to waive counsel and defend *in propria persona*, the Rule was invoked.

---

**8.** The requirement of advice as to "minimum" penalties was deleted in the amendment of the Rule effective 1 July 1986.

### (B)

■ We have ofttimes observed that our rules "are not guides to the practice of law but precise rubrics 'established to promote the orderly and efficient administration of justice and [that they] are to be read and followed.'" *E.g., Isen v. Phoenix Assurance Co.,* 259 Md. 564, 570, 270 A.2d 476 (1970). We held flatly in *State v. Bryan,* 284 Md. 152, 154–155, 395 A.2d 475 (1978) as to Rule 723, the precursor to Rule 4–215, that its provisions were mandatory, citing *Manning v. State,* 237 Md. 349, 353, 206 A.2d 563 (1965); *Taylor v. State,* 230 Md. 1, 2, 185 A.2d 197 (1962); *Williams v. State,* 220 Md. 180, 181, 151 A.2d 721 (1959); *Hill v. State,* 218 Md. 120, 127, 145 A.2d 445 (1958).

We remain satisfied that to protect the fundamental rights involved, to secure simplicity in procedure, and to promote fairness in administration, *see* Rule 1–201, formerly Rule 701, the requirements of Rule 4–215 are to be construed as mandatory. We reach this conclusion with consideration of the nature of the right with which the Rule is concerned and the unqualified recognition of the importance of that right by the Executive Department, the Legislative Department and the Judiciary Department of our State. Of great significance is that the Rule is uniformly couched in mandatory language. The commands to the court are that it "shall" do the acts set out; the Rule mandates the court's conduct. We see no support in the Rule for a construction that "substantial compliance" with its requirements is sufficient. We refuse to depart from our holding in *Bryan.*

### (C)

■ The State acknowledges that "[t]his Court has always held that the requirements of the Rule pertaining to a waiver of counsel are mandatory...." It accepts that the Rule retains this status and concedes that the trial court did not comply with that part of § (a)(3) which requires that "the court shall ... [a]dvise the defendant of ... the allowable penalties...." But, the State points out, our

"Rules of Construction" now speak to the consequences of noncompliance. The Court in the revision effective 1 July 1984 (designating Rule 701 as Rule 1–201) adopted this addendum in § (a):

> When a rule, by the word "shall" or otherwise, mandates or prohibits conduct, the consequences of noncompliance are those prescribed by these rules or by statute. If no consequences are prescribed, the court may compel compliance with the rule or may determine the consequences of the noncompliance in light of the totality of the circumstances and the purpose of the rule.

As we read the State's argument, it contends that because there are no consequences prescribed for the noncompliance here, we are free, notwithstanding the mandatory nature of Rule 4–215, to permit the judgments to stand. It urges that we do so in light of the totality of the circumstances. It opines that the defendants,

> who persisted against all advice in believing that they could do a better job than their lawyers, are not convincing in their assertion on appeal, now that they are convicted, that they did not understand their rights. To permit them a new trial based on this record would truly exalt form over substance and would not serve the ends of justice.

The State's view is not without a persuasive sheen. It may well be said that these defendants, who were granted all they sought at the trial with respect to their representation, are now attempting to take undue advantage of the concern for the rights of the individual which permeates the administration of our system of justice. But Rule 1–201(a) would have us look beyond the immediate circumstances and further determine the consequences of noncompliance in light of "the purpose of the rule" violated.

It is perfectly clear that the purpose of Rule 4–215 is to protect that most important fundamental right to the effective assistance of counsel, which is basic to our adversary system of criminal justice, and which is guaranteed by the federal and Maryland constitutions to every defendant in all

criminal prosecutions. The Supreme Court of the United States patently deems knowledge on the part of a defendant of the penalties allowable for the charges against him to play an integral role in the preservation of the right. *Von Moltke* expressly set out the factor as a matter to be considered. 332 U.S. at 724, 68 S.Ct. at 323. The United States Court of Appeals for the Fourth Circuit declared that when it is incumbent upon the trial court to determine that a defendant's waiver of his right to counsel is knowing and intelligent, "the court must assure itself that the defendant knows ... the possible punishment" for the charges against him. *United States v. King*, 582 F.2d 888, 890 (4th Cir. 1978). This Court obviously shares the regard for the vital part which knowledge of the allowable penalties by the defendant plays in the determination of the effectiveness of a waiver of counsel. The provision has persisted in our Waiver Rule through revisions and amendments and has been consistently mandated by the language employed to set it out.

In the light of all of this we would be reluctant indeed to conclude that noncompliance with such an essential part of our Waiver Rule be determined on an *ad hoc* basis. We think that to do so would erode Rule 4–215 and seriously encroach upon its purpose to protect the constitutional right to counsel. We believe that such a holding would enhance complexity rather than secure simplicity in procedure, tend to unfairness rather than fairness in administration, and, in the long run, promote rather than eliminate unjustifiable expense and delay.

We hold that the noncompliance with that part of subsection (3) of § (a) of Rule 4–215 which requires that the trial court advise the defendants of the penalties allowed for the crimes charged against them, rendered their waivers of counsel ineffective and that the court erred in accepting the waiver of each of them as freely and voluntarily made. Therefore, Bright and Parren were denied the assistance of counsel. They are entitled to have the judgments rendered against them set aside but they may be tried anew.

JUDGMENT OF THE COURT OF SPECIAL APPEALS REVERSED.

CASE REMANDED TO THAT COURT WITH DIRECTION TO REVERSE THE JUDGMENTS OF THE CIRCUIT COURT FOR BALTIMORE CITY AND TO REMAND THE CASE FOR A NEW TRIAL.

COSTS TO BE PAID BY THE MAYOR AND CITY COUNCIL OF BALTIMORE.

RODOWSKY, Judge, dissenting.

I respectfully dissent from Parts III and IV of the Court's opinion. The record is clear, in my view, that the petitioners knowingly and voluntarily chose to exercise their constitutional rights of self-representation and effectively waived, as a matter of constitutional law, their rights to counsel. Part III of the Court's opinion should flatly state that conclusion. In Part IV the Court holds that reversal is required because of the violation of one aspect of the Rule 4–215 mandated procedure for taking a waiver of the right to counsel, namely, that the trial court should on the record advise the defendant of the allowable penalties, including the maximum penalty. By that reflex to the rule violation the majority itself violates Md. Rule 1–201(a) in which we declared, as of July 1, 1984, the policy governing the consequences which flow from noncompliance with a Maryland Rule. Rule 1–201(a) reads:

These rules shall be construed to secure simplicity in procedure, fairness in administration, and elimination of unjustifiable expense and delay. When a rule, by the word "shall" or otherwise, mandates or prohibits conduct, the consequences of noncompliance are those prescribed by these rules or by statute. If no consequences are prescribed, the court may compel compliance with the rule or may determine the consequences of the noncompliance in light of the totality of the circumstances and the purpose of the rule.

Because the purpose of Rule 4–215 is to implement the constitutional rights to counsel and to self-representation, and because the totality of the circumstances in this case shows that those rights were preserved, there is no need to remedy the technical violation of the rule. (The full text of Rule 4–215 is set forth in an appendix to this dissent.)

## I

The standard governing the constitutional validity of the waivers in the case before us is found in the following passage from *Faretta v. California,* 422 U.S. 806, 835, 95 S.Ct. 2525, 2541, 45 L.Ed.2d 562, 581–82 (1975).

> When an accused manages his own defense, he relinquishes, as a purely factual matter, many of the traditional benefits associated with the right to counsel. For this reason, in order to represent himself, the accused must "knowingly and intelligently" forgo those relinquished benefits. *Johnson v. Zerbst,* 304 U.S. [458,] 464–465, 58 S.Ct. [1019,] 1023, 82 L.Ed. 1461 [(1938)]. *Cf. Von Moltke v. Gillies,* 332 U.S. 708, 723–724, 68 S.Ct. 316, 323, 92 L.Ed. 309 [(1948)] (plurality opinion of Black, J.). Although a defendant need not himself have the skill and experience of a lawyer in order competently and intelligently to choose self-representation, he should be made aware of the dangers and disadvantages of self-representation, so that the record will establish that "he knows what he is doing and his choice is made with eyes open." *Adams v. United States ex rel. McCann,* 317 U.S. [269,] 279, 63 S.Ct. [236,] 242, 87 L.Ed. [268,] 275 [(1942)].

The Court then summed up the relevant facts in Faretta's case, saying:

> Here, weeks before trial, Faretta clearly and unequivocally declared to the trial judge that he wanted to represent himself and did not want counsel. The record affirmatively shows that Faretta was literate, competent, and understanding, and that he was voluntarily exercising his informed free will. The trial judge had warned Faretta that he thought it was a mistake not to accept the

assistance of counsel, and that Faretta would be required to follow all the "ground rules" of trial procedure. [422 U.S. at 835–36, 95 S.Ct. at 2541 (footnote omitted).] The Court concluded that "[i]n forcing Faretta under these circumstances, to accept against his will a state-appointed public defender, the California courts deprived him of his constitutional right to conduct his own defense." *Id.*

Of significance here is that the *Faretta* opinion is silent on whether Faretta was affirmatively advised on the record of the maximum potential punishment for the grand theft with which he had been charged under California law. Further, *Faretta* enunciates its waiver standard by directly quoting from *Adams v. United States*, 317 U.S. 269, 63 S.Ct. 236, 87 L.Ed. 268 (1942): " '[H]e knows what he is doing and his choice is made with eyes open.' " *Adams*, rejecting a per se rule that the advice of counsel would be required to waive a jury in a criminal case, established a totality of the circumstances test. Justice Frankfurter for the Court aptly observed in *Adams* that "[t]he task of judging the competence of a particular accused cannot be escaped by announcing delusively simple rules of trial procedure which judges must mechanically follow." *Id.* at 277, 63 S.Ct. at 241.

The majority in the case *sub judice* emphasizes Justice Black's opinion announcing the judgment in *Von Moltke v. Gillies*, 332 U.S. 708, 68 S.Ct. 316, 92 L.Ed. 309 (1948). *Von Moltke* is the only opinion cited in *Faretta* 's discussion of the standard for waiver which refers specifically to "the range of allowable punishments[.]" *Id.* at 724, 68 S.Ct. at 323. The reference to *Von Moltke* in *Faretta* is a "Cf.," indicating that *Von Moltke* is not entirely on point, although the Court does not explain what distinction it has in mind.

We reviewed these Supreme Court decisions in *Leonard v. State*, 302 Md. 111, 128, 486 A.2d 163, 171 (1985), a self-representation case in which "the record [was] devoid of any reasonable effort by the trial court to engage in a [former] Rule 723 c waiver inquiry." There we quoted from *People v. Lopez*, 71 Cal.App.3d 568, 138 Cal.Rptr. 36

(1977) concerning the "fact of life" that the first ground of appeal by the pro se defendant is that he was allowed to represent himself. " 'Therefore, pragmatically, and defensively, in addition to the legal necessity of establishing that a defendant *voluntarily and intelligently* reaches this [waiver] decision, the trial court should also protect itself—and the record.' " *Leonard v. State*, 302 Md. at 128, 486 A.2d at 171 (quoting 71 Cal.App.3d at 572, 138 Cal.Rptr. at 38 (emphasis added)).

The *Lopez* court discussed three general areas to be explored when an accused elects self-representation. That discussion places "the range of allowable punishments" in perspective relative to the requirement that the waiver be voluntarily and intelligently made.

First, it is necessary, as *Faretta* says, that the defendant "be made aware of the dangers and disadvantages of self-representation." Under this category, we suggest that the defendant be advised:

(a) That self-representation is almost always unwise....

(b) That he is entitled to and will receive no special indulgence by the court....

(c) That the prosecution will be represented by an experienced professional counsel....

(d) That he is going to receive no more library privileges than those available to any other [pro se defendant]....

Second, we feel it would certainly be advisable to make some inquiry into his intellectual capacity....

(a) His education and familiarity with legal procedures....

(b) If there is any question in the court's mind as to a defendant's mental capacity it would appear obvious that a rather careful inquiry into that subject should be made....

(c) [H]e must be made aware of the alternative, i.e., the right to counsel....

(d) Perhaps some exploration into the nature of the proceedings, the possible outcome, possible defenses and possible punishments might be in order. While this may seem to be sliding back into pre-*Faretta* practices, it will serve to point up to defendant just what he is getting himself into and establish beyond question that " 'he knows what he is doing and his choice is made with eyes open.' " (*Faretta, supra,* [422 U.S.] at p. 835, 95 S.Ct. at p. 2541.)

(e) It should be made clear that if there is misbehavior or trial disruption, the defendant's right of self-representation will be vacated.

Third, he should definitely be made aware that in spite of his best (or worst) efforts, he cannot afterwards claim inadequacy of representation. [71 Cal.App.3d at 572–74, 138 Cal.Rptr. at 39.]

In *State v. Quinn,* 565 S.W.2d 665 (Mo.App.1978), the court set forth in an appendix to its opinion guidelines for trial judges in taking waivers of counsel in pro se cases. The appendix is a condensation of the circumstances reviewed in *People v. Lopez* but omits saying that "[p]erhaps some exploration into ... possible punishments might be in order." *Lopez, supra,* 71 Cal.App.3d at 573, 138 Cal.Rptr. at 39.

Because a reviewing court determines from all of the circumstances on the whole record whether a pro se defendant's waiver is voluntary and knowing, there are opinions upholding waivers without any recital in the operative facts that the trial court had explained to the accused on the record the range of possible punishments. In these cases the waiver is upheld either by affirming the conviction of the pro se defendant or by reversing the conviction of the defendant who was refused self-representation. *See, e.g., King v. State,* 55 Ala.App. 306, 309, 314 So.2d 908, 911, *cert. denied,* 294 Ala. 762, 314 So.2d 912 (1975) (accused who had one prior conviction resulting in seventeen months confinement "was certainly not a newcomer to the judicial processes."); *Burton v. State,* 260 Ark. 688, 543 S.W.2d 760

(1976) (prior conviction for same offense a factor); *Barnes v. State,* 258 Ark. 565, 528 S.W.2d 370 (1975); *People v. Jackson,* 88 Cal.App.3d 490, 151 Cal.Rptr. 688 (1978); *Reliford v. People,* 195 Colo. 549, 579 P.2d 1145 (1978), *cert. denied, Reliford v. Colorado,* 439 U.S. 1076, 99 S.Ct. 851, 59 L.Ed.2d 43 (1979); *Commonwealth v. Jackson,* 376 Mass. 790, 383 N.E.2d 835 (1978); *Commonwealth v. Flowers,* 5 Mass.App.Ct. 557, 365 N.E.2d 839 (1977), *cert. denied, Flowers v. Massachusetts,* 434 U.S. 1077, 98 S.Ct. 1269, 55 L.Ed.2d 783 (1978); *People v. Anderson,* 398 Mich. 361, 247 N.W.2d 857 (1976) (no admonition on dangers of self-representation, but the accused's reasons explaining dissatisfaction with appointed counsel reflected accused knew what he was doing); *Johnson v. State,* 556 P.2d 1285 (Okla.Crim. 1976) (two prior convictions a factor); *State v. Miller,* 248 N.W.2d 61 (S.D.1976); *Fultz v. State,* 632 S.W.2d 787 (Tex.Ct.App.1982) (no inquiry at all by trial court but the defendant had filed fourteen pretrial motions pro se); *Irvin v. State,* 584 P.2d 1068 (Wyo.1978).

Indeed, some courts have said that it can be presumed from the fact that the accused was represented by counsel prior to the waiver that the accused had been advised of the range of possible punishments. In *Thomas v. Superior Court of Santa Clara County,* 54 Cal.App.3d 1054, 126 Cal.Rptr. 830 (1976), the accused, who was charged with capital murder, robbery, and criminal conspiracy, obtained a mandamus directing the trial court to allow a pro se defense. The appellate court concluded that the defendant "was aware of the seriousness of the crime and the possible consequences" because he "had been arraigned twice, presumably receiving advice from the court on his constitutional rights [and] he had been represented by counsel ... presumably receiving advice from counsel as to the nature of the offenses, the available pleas and defenses and the possible punishment." *Id.* at 1058–59 n. 5, 126 Cal.Rptr. at 832–33 n. 5. Similar is *State v. Gethers,* 193 Conn. 526, 480 A.2d 435 (1984). Connecticut Practice Manual § 961 requires the trial court to make a thorough inquiry and

satisfy itself that the defendant, *inter alia,* comprehends "the range of permissible punishments...." In *Gethers* the trial court had failed to do this but the waiver was upheld on appeal from a conviction after trial. The court said that "[i]n addition to the fact that a trial court may appropriately presume that defense counsel has explained the nature of the offense in sufficient detail; *Henderson v. Morgan,* 426 U.S. 637, 647, 96 S.Ct. 2253, 2258, 49 L.Ed.2d 108 (1976)[,]" the transcript indicated that standby counsel twice mentioned that the charges of robbing two bank tellers at the same bank carried a " 'penalty of 20 to 40.' " 193 Conn. at 537, 480 A.2d at 442.

There is another class of cases in which the defendant on direct appeal from, or in a collateral attack on, the conviction specifically argues that the sentencing court had not explained the range of punishments. In these cases the reviewing courts conclude, on a variety of factual bases, that the defendant's waiver was, nevertheless, knowing. For example, *United States ex rel. Konigsberg v. Vincent,* 526 F.2d 131 (2d Cir.1975), *cert. denied,* 426 U.S. 937, 96 S.Ct. 2652, 49 L.Ed.2d 388 (1976) involved a habeas corpus challenge to confinement under a New York conviction for extortion. The prisoner had been indicted in December 1963 and was tried four years later. He fired counsel on the twelfth trial day. The Second Circuit held that "Konigsberg's involvement with the courts was such that there was no need" for the trial judge to have given him explicit warnings and advice regarding the waiver of counsel. *Id.* at 134. Prior to the waiver Konigsberg had been convicted of unlawful possession of goods stolen from interstate commerce and had brought at least one collateral attack on that conviction. The Second Circuit has also held that a defendant who was on trial for income tax evasion and who had been through an earlier tax evasion trial and appeal involving similar factual and legal issues could validly waive counsel without explicit warnings and advice by the court. *See United States v. Rosenthal,* 470 F.2d 837 (2d

Cir.1972), *cert. denied, Rosenthal v. United States,* 412 U.S. 909, 93 S.Ct. 2298, 36 L.Ed.2d 975 (1973).

Illinois S.Ct. Rule 401(a) prohibits trial courts from permitting a waiver of counsel without the court informing the accused of, *inter alia,* the minimum and maximum sentences prescribed by law. In *People v. Nieves,* 92 Ill.2d 452, 442 N.E.2d 228 (1982), the court upheld pro se representation which had been undertaken without any advice from the court on potential sentences and which had resulted in a thirty year sentence for heroin distribution. The Illinois court held that all of the admonishments required under its rule need not be given where the accused sought and obtained the "technical assistance" of an attorney, *i.e.,* standby counsel. The court further noted that the defendant, prior to his waiver, had been convicted of the same criminal offense and had been told the maximum and minimum sentences in connection with the other prosecution. The United States District Court for the Northern District of Illinois upheld Nieves's conviction against constitutional challenge on habeas corpus. *See United States ex rel. Nieves v. O'Leary,* 606 F.Supp. 1478 (N.D.Ill.1985). That court held:

> The Seventh Circuit has held on several occasions that where a defendant was acquainted with the criminal process, had past experience with the consequences of a conviction, had knowledge of the benefits of counsel from prior criminal trials, and knew of the seriousness of the charge, that that defendant's waiver of counsel was intelligently made despite the fact that no one had expressly told him of the nature of the charge and the range of possible punishments. *Creighbaum v. Burke,* 398 F.2d 822 (7th Cir.), *cert. denied,* 393 U.S. 955, 89 S.Ct. 386, 21 L.Ed.2d 368 (1968) and *Cox v. Burke,* 361 F.2d 183 (7th Cir.), *cert. denied,* 385 U.S. 939, 87 S.Ct. 304, 17 L.Ed.2d 218 (1966). [606 F.Supp. at 1483.]

The District of Columbia Court of Appeals in *Hsu v. United States,* 392 A.2d 972, 983 (1978) had concluded that "the conviction of a pro se criminal defendant will be

vulnerable to reversal unless the trial court has followed a script covering the questions specified by Justice Black in *Von Moltke* [.]" Thereafter, in *Fowler v. United States*, 411 A.2d 618 (D.C.), *cert. denied*, 446 U.S. 985, 100 S.Ct. 2967, 64 L.Ed.2d 841 (1980) the accused represented himself without benefit of trial court admonitions as outlined in *Hsu*. Prior to trial the accused had written to the court requesting assignment of two lawyers to his case "due to the strong penalties [and] the severity of the offense [armed robbery and kidnapping]." *Id.* at 621. The admissions in that letter, representation by counsel up to the waiver and the accused's knowledge of "a substantial amount about criminal law" (*id.* at 623), resulted in a valid waiver.

*People v. Smith*, 33 Ill.App.3d 725, 338 N.E.2d 207 (1975) held that there was compliance with the Supreme Court of Illinois Rule referred to above where the trial court admonished that the charges were serious, involved felonies and could result in penitentiary confinement. The court noted that "there is no claim made that defendant was actually unaware of the potential penalties." *Id.* at 728, 383 N.E.2d at 209.

Having hopefully demonstrated that there is a world which exists beyond the confines of Md.R. 4–215, I shall now turn to the facts of the instant case.

## II

On September 26, 1984, when petitioners, Marvin Parren (Parren) and David Bright (Bright), committed the offenses for which they were convicted in this case, they were prisoners in the South Wing of the Maryland Penitentiary where they were confined under special disciplinary circumstances for institutional rules infractions. Parren, then age 23, was serving the sixth year of a fifteen year sentence for robbery with a deadly weapon. Bright, then age 26, had served over seven years on a sentence of life plus five years for rape and escape. Both men had very extensive juvenile records. What the majority calls a "brouhaha" took place in the aisle outside of a tier of cells when the prisoners were

directed to return to their cells at the end of an exercise period. Parren attacked one guard with a homemade knife. When other guards attempted to rescue the victim by advancing down the aisle behind a protective shield, Bright pushed against the shield to retard their progress. At one point in the melee Parren reached around Bright and stabbed a second guard in the hand. Parren and Bright were charged on November 5 in a series of multi-count indictments alleging as to both, *inter alia,* assault with intent to murder, attempted murder, common law assault, and deadly weapon offenses. Parren was convicted of assault with intent to murder the first guard, assault on the second guard, and carrying a deadly weapon with intent to injure. Bright was convicted of assault on both guards. Parren was sentenced to twenty years, consecutive to the fifteen year sentence under which he was confined, and Bright was sentenced to six years, consecutive to his life plus five years sentence.

The docket entries reflect that on December 4, 1984, one attorney entered his appearance for both petitioners and that on that same date each petitioner was "arraigned" and pleaded not guilty. In essence the arraignment consisted of setting a trial date. This is because Rule 4–215(a) requires the court to furnish to an accused the information enumerated therein only if the defendant's first appearance in court is without counsel. In other words, the rule reasonably assumes that counsel, to whom copies of the charging documents have been delivered, will explain the charges and their consequences to the defendants.

On December 17, 1984, replacement counsel entered his appearance for Bright, so that petitioners had separate counsel up to their waivers on March 4, 1985, and had separate standby counsel continuously thereafter.

Beginning December 26, 1984, petitioners, acting pro se, filed a series of pretrial motions which are quite literate. Their joint motion for discovery of that date is comprehensive. Parren followed up with a motion on January 22, 1985, complaining of the lack of response to the discovery

motion. On January 21 Parren moved for a speedy trial, arguing that there should be no postponement of the scheduled trial date of February 6. He also filed a petition for a "Writ of Habeas Corpus; Ad Testificandum" to obtain the presence at trial as witnesses of eight inmates of the prison system.

The case was reached for trial on March 4. Petitioners, with some assistance from their attorneys, personally presented a series of oral motions. Bright told the court, "I am quite aware of these charges, but the problem is now that these charges," *i.e.*, attempted murder and assault with intent to murder, are duplicative. In his argument Bright cited to Art. 27, § 12, a penalty section for various aggravated assaults including assault with intent to murder. In that context the court observed that one of the crimes carried life imprisonment.[1] It is immaterial that the trial judge did not specify which offense potentially carried a life sentence. If the petitioners theretofore had not known from their prior experiences in the criminal justice system, from their legal research for their written and oral motions, or from consultation with their counsel, that the charges against them were extremely serious, they certainly knew how serious the charges were when the court told them they potentially faced life sentences.

Still on the morning of March 4 each petitioner separately argued that the indictments were defective because they had been delivered to defense counsel and had not been served on the petitioners personally by an agent of the State. Ironically, Bright cited former Rule 723 in support of his argument and when assisting Parren with the latter's argument. Rule 723 is the predecessor to Rule 4–215. Neither petitioner complained that his counsel had not told him the "range of allowable penalties" referred to in Rule 723 c 1.

---

1. It is attempted murder which potentially carries a life sentence. See Md.Code (1957, 1982 Repl. Vol.), Art. 27, §§ 644A and 412. Under § 12 assault with intent to murder carries a maximum of thirty years.

When the proceedings moved on to the waiver inquiry, the trial court conducted the examination summarized in the majority opinion. That examination reflects that each petitioner was "made aware of the dangers and disadvantages of self-representation[.]" *Faretta, supra,* 422 U.S. at 835, 95 S.Ct. at 2541. In that phase of the morning's proceedings Bright's counsel told the court that on each occasion when the attorney and client met Bright indicated that he had read cases and Bright asked his counsel specific questions. Parren told the court he had been reading law and had familiarity with it "[t]o a small degree." The jury was selected that day.

As the first order of business on March 5 standby counsel for Bright made a statement for the record. He said he had met with Bright seven times and had "been impressed each time by the fact that [Bright] has been researching the law and has had a very active participation in the case." After the waiver Bright's mother had urged counsel to attempt to change Bright's mind about representing himself. Counsel said he could step in and try the case at that time. The statement concluded:

I have been prepared to try the case since February 6th of this year. So Mr. Bright has indicated to me that he realizes—*that he understands everything.* He does wish for me to be here to assist him if he has any questions, but he does wish to proceed with his own case. Is that correct, Mr. Bright?

DEFENDANT BRIGHT: Yeah. [Emphasis added.]

Thereafter opening statements were made and testimony began. The case consumed nine trial days and the jury verdict was returned on March 18.

In his argument to the jury Parren said:

If I was guilty as they say I was guilty, I would have took the pleas that this man [the prosecutor] offered. This man offered me four and five years.

The State objected and the court advised the jury that "[n]egotiations before trial are not admissible." An ac-

cused who has standby counsel simply would not reject the offer of a plea bargain couched in terms relating to the sentence without having at least considered what the potential maximum sentence might be.

The petitioners accelerated the prediction made by the California court in *Lopez* that the first argument on appeal by a pro se defendant would challenge the self-representation. Parren and Bright made that argument in their joint, pro se, longhand motion for a new trial.[2]

Each petitioner argued the motion orally to the court on April 30. In his colloquy with the court Bright denied averring that his waiver was not intelligently made but emphasized that his point was the court's failure to follow the required procedure.

---

2. That part of their motion reads in full:

It is clear that the Court of Appeals have the power to make rules, Md. Constitution Art. 4 sec. 18, which are binding to all lower Courts of the State of Maryland which shall have the force of the Law until rescinded, changed or modified by the Court of Appeals or otherwise by law.

It is clear that Md. Rule 4–215 and old Md. Rule 723 Provisions for or Waiver of Counsel are mandatory *Brown v. State,* 27 Md.App. 233, 340 A.2d 409 (1975).

It is clear that there must be a record of compliance with respect to all provisions of waiver of counsel. *Thompson v. State,* 284 Md. 113, 394 A.2d 1190 (1978). The requirements of waiver of counsel are mandatory, and must be complied with irrespective of the type of plea enter, or lack of an affirmative showing of prejudice to the accused. *State v. Diggs,* 24 Md.App. 681, 332 A.2d 283 (1975)[.]

In the absence of an inquiry under Md. Rule 4–215d discharge of Counsel the Court shall comply with Md. Rule 4–215A. (Section 4–215A is derived from 723c.) as an intelligently and knowingly waiver of counsel. *Hamilton v. State,* 30 Md.App. 202, 351 A2d 153 (1976).

Where the record fails affirmatively to show a compliance with the inquiry of waiver of counsel, the judgment and sentence must be reversed. *Taylor v. State,* 230 Md. 1, 185 A2d 197 (1962)[.]

Therefore David Bright and Marvin Parren in their Motion for New Trial seek to have this Court reverse the judgment of the jury because David Bright nor Marvin Parren possessed the intelligence and capacity to appreciate the consequences as to the nature of the charges against them, any lesser included offenses, and the range of allowable penalties, including mandatory and minimum penalties if any in the indictments.

THE COURT: All right. That's the basis for your New Trial Motion?

MR. BRIGHT: No, no. I've got some more. I have some more. I also concern Maryland Rule 425 as far as waiver of counsel. And my argument is that you Your Honor, didn't go through the procedure that would mandate mandatory by the Court of Appeals of the decision in that a violation itself, because that has to be intelligently, knowingly I did have know the consequences of the plea. I didn't know the consequences of the plea. I mean, consequences of representing myself, as far as to offices [offenses?], because I explained to the Court the same day of trial, that I never received the Indictment. At this time I haven't received the Indictment yet.

Also that I never had no hearing arraignment. I wasn't at—I wasn't presented at my arraignment or nothing else. I wouldn't know the lesser included offense, or higher included offense as to penalty, therefore, I don't think it would be knowingly, intelligently waived.

THE COURT: Well, did your lawyer have a copy? You had a lawyer. Did he have a copy of all that?

MR. BRIGHT: The most recent case of Leonard versus State, that the Court is mandatory required to go through certain procedures, and if you would continually ask the Court Stenographer, who actually recorded the proceedings, she could actually do exactly what did take place and what didn't take place.

THE COURT: Are you raising the issue that you didn't intelligently waive your rights to be represented by counsel?

MR. BRIGHT: No, sir.

THE COURT: That is what you are saying?

MR. BRIGHT: No, sir. I am saying—I am saying, that do you understand what I am saying, because I didn't know the consequences of waiving counsel. And in Leonard versus State it clearly explains to the Court to go through certain procedures. I am saying you, Your Honor, didn't go through the procedures.

THE COURT: Well, I think, I did. The case says there are certain questions you have to ask. As I recall, I think, I asked those questions. Go ahead though. What other points do you want to address?

In summing up the reasons for denying Bright's motion for a new trial the judge in part said:

He said there was no intelligent waiver of counsel. I didn't follow some mandatory procedure, and I asked him the value of having a lawyer. He insisted, very, very vehemently, that he wanted to represent himself. And, I think, we took care of any kind of prejudice to him by [counsel's] involvement.

The trial judge's colloquy with Parren exposes the utter lack of substance and deification of technicality in the majority's position.

MR. PARREN: ... Yes, I have some newly discovered evidence underneath, I think, it is the Maryland Rules of Procedure, or Maryland Constitution, as well as case law of Leonard versus State. Say Rule 723, which has been revised to 4–215. It states that before the Judge can accept a waiver of counsel from a Defendant, it must be that he advises it. It must be that he be sure that Defendant know.

THE COURT: All right. Let me stop you. That wouldn't be a ground for a new trial in my estimation. I did what I thought the law requires me to do. Now, you have that right when you take an appeal, you can raise that issue, because I am the one that heard both of you insist, after almost begging you not to[, "]let me do this.["] It's kind of hard to say I treated you unfairly and denied you any constitutional rights, when I begged you to take these two lawyers.

Now, if I failed to follow Rule 728, and ask you how far you went in school, I probably did. But if I didn't, if the Court of Appeals thinks that is significant, then they didn't hear everything, that's what you do on appeal. But I certainly would not sit here and hear you say that there was anything unfair or unconstitutional about this.

*I begged you. I saw your mother out in the hall. I said, talk to them. You are making a mistake.* You both, in my estimation, convicted yourselves by a lot of things you were blurting out. I thought it was a charade. I say that for the record, and I couldn't do anything. So you insisted on it. So, therefore, don't waste my time saying I didn't follow the rules, because it hurts my feelings.

MR. PARREN: Don't misunderstand me.

THE COURT: Let me explain, if I did something wrong, let the Court of Appeals reverse me.

MR. PARREN: Let me say this, before I proceed. *You did everything, you practically begged me to get a lawyer.* I am saying, see that's why you can't take things personally. [Emphasis added.]

All of these facts, in my view, demonstrate a knowing and voluntary election of self-representation and waiver of counsel.

### III

The majority finds no need to decide whether petitioners' rights to counsel were violated because under the majority analysis that factor is immaterial. All that matters is that there has been a departure from the ordained ritual. It does not matter to the majority that the purpose of Rule 4–215 is to protect the constitutional right and that that purpose has been fully served here. What is important under the majority analysis is rites and not rights. I, for one, thought, and I believe our Standing Committee on Rules of Practice and Procedure would concur, that this kind of formalism had been put to rest by Rule 1–201(a).

Rule 4–215 does not prescribe the consequences of noncompliance. In that circumstance Rule 1–201(a) directs the court which is addressing the issue to "determine the consequences of the noncompliance in light of the totality of the circumstances and the purpose of the rule." The majority's bow in the direction of Rule 1–201(a) is an analysis resting

on false logic. The majority treats the issue as if it were whether trial judges are to follow Rule 4–215 or not, depending upon a trial judge's analysis of the total circumstances. The majority rejects that approach, particularly in light of our cases which have stated that predecessor rules were mandatory. That is, of course, not the issue. I accept that the rule is mandatory. I accept that the rule has been violated in the sense that the trial judge did not perform every step in the dance prescribed in the rule. My question is: "Who has been hurt?" If, as demonstrated in Parts I and II of this dissent, and not denied in the majority opinion, petitioners' constitutional rights remain inviolate, the purpose of the rule has been served and, as we declared in Rule 1–201(a), there is nothing to remedy.

The majority also undertakes to reinforce its conclusion by citation to *United States v. King,* 582 F.2d 888 (4th Cir.1978), a direct appeal from a kidnapping conviction after a pro se defense. The language relied on by the majority reads, after citation to *Faretta*'s "eyes open" language, in full as follows:

> Thus, the court must assure itself that the defendant knows the charges against him, the possible punishment and the manner in which an attorney can be of assistance. [*United States v.*] *Townes,* [371 F.2d 930,] 933 [ (4th Cir.1966), *cert. denied,* 387 U.S. 947, 87 S.Ct. 2083, 18 L.Ed.2d 1335 (1967) ]; *Aiken v. United States,* 296 F.2d 604 (4th Cir.1961). [582 F.2d at 890.]

King had in fact been told by the court the maximum penalty. From the standpoint of potentially persuasive authority it would be more relevant for the majority to have looked to the Fourth Circuit's position when the trial judge *fails* to obtain the specified assurances from the accused.

That answer is found in *dicta* in *United States v. Townes, supra,* a 28 U.S.C. § 2255 case in which the petitioner had both waived counsel and pled guilty after having been advised, *inter alia,* of the potential maximum sentence. Nevertheless the court, speaking through Judge Winter, went on to say that

failure [by the trial judge] to perform the duty does not automatically render the waiver invalid, because a defendant who seeks relief under § 2255 must still bear the burden of proving that he did not understand his constitutional rights. *Aiken v. United States,* supra, p. 607. Cf. *Heiden v. United States,* 353 F.2d 53 (9th Cir.1965). If it appears, therefore, from the transcript of the original purported waiver, or from a preponderance of the evidence adduced at the § 2255 hearing, or a combination of both, that the waiver met the constitutional test, a § 2255 movant would not be entitled to relief. [371 F.2d at 933.]

And further:

But again, we reiterate our holding in *Aiken* that all of the suggested interrogation is simply a guide for establishing on the record an intentional relinquishment of the right to counsel, known and understood by an accused, and not a rigid ritual to be slavishly followed. We determine this case, and we shall determine future cases, on the basis of whether, when the record is examined as a whole, it appears that there was a waiver of a constitutional right which meets the test of *Johnson v. Zerbst* .... [*Id.* at 934.]

Rule 1–201(a) simply announces that a court will consider the effect of noncompliance with a rule of court by applying the same principle which we have applied when considering the consequences of the violation of a statute which does not by its terms state those consequences. In *State v. Werkheiser,* 299 Md. 529, 474 A.2d 898 (1984), a police officer had failed to obtain a blood chemical test within a statutorily prescribed time limit from a person whom the officer had reasonable grounds to believe was driving or attempting to drive while under the influence of alcohol. We reversed the trial court's dismissal of the criminal charges based on an analysis within the framework described below.

We agree with the trial court that the use of the word "shall" in this statute imposes a mandatory duty upon police officers. As we have stated repeatedly: "Under

settled principles of statutory construction, the word 'shall' is ordinarily presumed to have a mandatory meaning." *State v. Hicks,* 285 Md. 310, 334, 403 A.2d 356, 369 (1979). However, the mandatory nature of the language does not indicate the sanction to be applied for violation of the statute. Therefore, the Court must consider the purpose and policy of the statute in order to determine the appropriate sanction, if any, to be applied. The legislative purpose of this statute will not be advanced by holding dismissal as the appropriate sanction. [299 Md. at 533, 474 A.2d at 900.]

And *see Gore v. State,* 309 Md. 203, 522 A.2d 1338 (1987), applying a substantial compliance test to claimed violation of Rule 4–325(e) governing exceptions to instructions.

There is an overtone of righteousness to the majority position. The law-giver has spoken but the mandate has been broken. Someone must be punished. Here the majority punishes the taxpayers of Baltimore City who must bear the expense of a retrial, the purpose of which is not to vindicate the constitutional rights of the petitioners but to vindicate Rule 4–215 which today takes on a sanctity all of its own.

I would affirm.

Chief Judge MURPHY and Judge McAULIFFE have authorized me to say that they concur in this dissenting opinion.

### APPENDIX

Rule 4–215 reads as follows:

(a) First Appearance in Court Without Counsel.—At the defendant's first appearance in court without counsel, the court shall:

(1) Make certain that the defendant has received a copy of the charging document containing notice as to the right to counsel.

(2) Inform the defendant of the right to counsel and of the importance of assistance of counsel.

(3) Advise the defendant of the nature of the charges in the charging document, and the allowable penalties, including mandatory or minimum penalties, if any.

(4) Conduct a waiver inquiry pursuant to section (b) of this Rule if the defendant indicates a desire to waive counsel.

(5) When in circuit court, advise the defendant that the action will be scheduled for trial and that if the defendant appears for trial without counsel, the court could determine that the defendant waived counsel and proceed to trial with the defendant unrepresented by counsel.

(6) When in the District Court, if a postponement is granted to obtain counsel, advise the defendant that if the defendant appears for trial without counsel, the court could determine that the defendant waived counsel and proceed to trial with the defendant unrepresented by counsel.

The clerk shall note compliance with this section in the file or on the docket.

(b) Express Waiver of Counsel.—If a defendant who is not represented by counsel indicates a desire to waive counsel, the court may not accept the waiver until it determines, after an examination of the defendant on the record conducted by the court, the State's Attorney, or both, that the defendant is knowingly and voluntarily waiving the right to counsel. If the file or docket does not reflect compliance with section (a) of this Rule, the court shall comply with that section as part of the waiver inquiry. The court shall ensure that compliance with this section is noted in the file or on the docket. At any subsequent appearance of the defendant before the court, the docket or file notation of compliance shall be prima facie proof of the defendant's express waiver of counsel. After there has been an express waiver, no postponement of a scheduled trial or hearing date will be granted to

obtain counsel unless the court finds it is in the interest of justice to do so.

(c) Waiver of Counsel by Failing to Obtain Counsel.—If a defendant who has appeared before the court pursuant to section (a) appears without counsel on the date set for a hearing or trial and indicates a desire to have counsel, the court shall permit the defendant to explain the appearance without counsel. If the court finds that there is a meritorious reason for the defendant's appearance without counsel, the court shall continue the action to a later time and advise the defendant that if counsel does not enter an appearance by that time, the action will proceed to trial with the defendant unrepresented by counsel. If the court finds no meritorious reason for the defendant's appearance without counsel, it may determine that the defendant has waived counsel by failing or refusing to obtain counsel, and it may proceed with the hearing or trial.

(d) Discharge of Counsel—Waiver.—If a defendant requests permission to discharge an attorney whose appearance has been entered, the court shall permit the defendant to explain the reasons for the request. If the court finds that there is a meritorious reason for the defendant's request, the court shall permit the discharge of counsel; continue the action if necessary; and advise the defendant that if new counsel does not enter an appearance by the next scheduled trial date, the action will proceed to trial with the defendant unrepresented by counsel. If the court finds no meritorious reason for the defendant's request, the court may not permit the discharge of counsel without first informing the defendant that the trial will proceed as scheduled with the defendant unrepresented by counsel if the defendant discharges counsel and does not have new counsel. If the court permits the defendant to discharge counsel, it shall comply with subsections (a)(1)–(4) of this Rule if the docket or file does not reflect prior compliance.